CHARLES S. MOTT et al., Appellants, *v.* WILLIAM UNDER-
wood et al., Respondents.

1. OYSTER BEDS — RIGHTS OF TENANTS IN COMMON.   One of two
tenants in common of natural oyster beds cannot deprive his co-tenant
of the right to take any of the natural oysters, by scattering a few seed
oysters over the premises in such a manner as to render it impossible to
remove the natural ones without disturbing those planted.

2. TENANTS IN COMMON — INJUNCTION.   Equity will not enjoin one of
two tenants in common of natural oyster beds, or his licensees, from enter-
ing and removing natural oysters therefrom, on the ground that such acts
interfere with seed oysters, planted by his co-tenant without his acquies-
cence, where it does not appear that the acts done in removing the oysters
were malicious, unusual or unreasonable, and it does appear that an injunc-
tion, if granted, would operate inequitably and contrary to real justice, by
working a deprivation of admitted rights.

*Le Barron* v. *Babcock* (122 N. Y. 153), distinguished.

Reported below, 73 Hun, 509.

(Argued January 31, 1896; decided February 18, 1896.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made December 1, 1893, which affirmed a judgment in favor of defendants dismissing the complaint entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*A. A. Spear* for appellants. Injunction is a proper remedy in this action. (*Wright* v. *S. B. & N. Y. R. R. Co.*, 49 Hun, 445; 124 N. Y. 668; High on Injunc. § 739; *Corning* v. *T. I. & N. Factory*, 40 N. Y. 191; *Mulry* v. *Norton*, 100 N. Y. 424; *P. G. Co.* v. *C. G. Co.*, 89 N. Y. 493; *N. Y. C. R. R. Co.* v. *City of Rochester*, 127 N. Y. 591; *M. & H. R. R. Co.* v. *Artcher*, 6 Paige, 83; *Johnson* v. *City of Rochester*, 13 Hun, 285; *Meyer* v. *Phillips*, 97 N. Y. 485; *Belknap* v. *Trimple*, 3 Paige, 577; *Pappenheim* v. *M. E. R. Co.*, 128 N. Y. 436; *Curtis* v. *Keesler*, 15 Barb. 511; *Williams* v. *N. Y. C. R. R. Co.*, 16 N. Y. 97; *Fox* v. *Fitzsimmons*, 29 Hun, 574; 100 N. Y. 618; *Baron* v. *Korn*, 51 Hun, 401; 127 N. Y. 224; *Speer* v. *Cutter*, 5 Barb. 486; *Johnson* v. *White*, 11 Barb. 198; *Fertilizer Co.* v. *Guano Co.*, 82 N. Y. 476; *Broiestedt* v. *S. S. R. R. Co.*, 55 N. Y. 220.) Damages may be recovered as an incident to the equitable relief. (*Williams* v. *N. Y. C. R. R. Co.*, 16 N. Y. 97; *Shepard* v. *M. R. Co.*, 117 N. Y. 442.) The trustees had no right to interfere in any way with the leased premises, but only the right to call the Smiths to account for the rents received by them. (*Peabody* v. *Minot*, 24 Pick. 329; 1 Washb. on Real Prop. 685, 695; *Le Barron* v. *Babcock*, 46 Hun, 598; 122 N. Y. 153; *Hand* v. *Newton*, 92 N. Y. 88; *Robins* v. *Ackerly*, 91 N. Y. 98; 4 Kent's Comm. 370; *Jackson* v. *Tibbits*, 9 Cow. 241; 1 R. S. 750, § 9; Code Civ. Pro. § 1666; *Green* v. *Putnam*, 1 Barb. 500, 508; *Scott* v. *Guernsey*, 60 Barb. 163, 180; 48 N. Y. 106; *Kingsland* v. *Chatwood*, 39 Hun, 602; *Roseboom* v. *Roseboom*, 15 Hun, 309; *Joslyn* v. *Joslyn*, 9 Hun, 388; *Dresser* v. *Dresser*, 40 Barb. 300; *Woolever* v. *Knapp*, 18

Barb. 265; *Wood* v. *Phillips*, 43 N. Y. 152; *Hyatt* v. *Wood*, 4 Johns. 150; *Mumford* v. *Brown*, 1 Wend. 52; *Erwin* v. *Olmstead*, 7 Cow. 229; *McGarrell* v. *Murphy*, 1 Hilt. 132; Freeman on Co-tenancy, § 253; *King* v. *Phillips*, 1 Lans. 421; *Kealy* v. *Goodwin*, 16 Mass. 1; *Baker* v. *Wheeler*, 8 Wend. 505; *Foster* v. *Magee*, 2 Lans. 182; *Hastings* v. *Hastings*, ·110 Mass. 285; *Miller* v. *Miller*, 7 Pick. 133; *Brown* v. *Wellington*, 106 Mass. 318.

*Nicoll Floyd* for respondents. The plaintiffs and defendants were tenants in common of the premises in question. (4 Kent's Comm. 363.) Being co-tenants, each had equal right to use and enjoy the common property and every part of it. (Freeman on Co-tenancy, § 286; ·*Lakeman* v. *Comm.*, 4 Cush. 597; *Carpentier* v. *Webster*, 27 Cal. 544; *Zapp* v. *Miller*, 109 N. Y. 57; *Joslyn* v. *Joslyn*, 9 Hun, 388; *Woolever* v. *Knapp*, 18 Barb. 265; *Wilcox* v. *Wilcox*, 48 Barb. 327; *Wood* v. *Phillips*, 43 N. Y. 152; *Le Barron* v. *Babcock*, 46 Hun, 598; 122 N. Y. 153; *McCabe* v. *McCabe*, 18 Hun, 154; *Scott* v. *Guernsey*, 48 N. Y. 124; 1 R. S. 750, § 9; Code Civ. Pro. § 1666; 4 Kent's Comm. 365.) The proposition on the part of the plaintiffs that interference with the common property by one co-tenant is actionable is entirely without support, whether applied to real or personal common property. (Abb. Trial Evidence, 636; *Dubois* v. *Beaver*, 25 N. Y. 123; Malone on Real Prop. 40; Sedg. & W. on Titles, § 276; 4 Kent's Comm. 370; *Jones* v. *Cohen*, 82 N. C. 75; *Bishop* v. *Blair*, 36 Ala. 80; *Hartford* v. *Tetherson*, 2 Jones, 393; *Strong* v. *Coulter*, 13 Minn. 82; *G. B. Co.* v. *Newby*, 1 Oreg. 173.) Whether the *locus* was or was not a productive part·of the common estate and whether the defendants took therefrom other than the natural product, are questions of fact, properly determined by the trial justice. (*In re Ross*, 87 N. Y. 514; *People ex rel.* v. *French*, 92 N. Y. 306; *Dillon* v. *Cockcroft*, 90 N. Y. 649; *Pegram* v. *N. Y. E. R. R. Co.*, 147 N. Y. 149; *Lagerquist* v. *U. S. I. Ins. Co.*, 89 Hun, 26.)

The execution of the lease to the plaintiffs of the exclusive use and occupation of the common property covered by it is an attempted ouster of their co-tenant by the plaintiffs' lessors. (Freeman on Co-tenancy, § 241; 4 Kent's Comm. 364.)

Martin, J. On the first day of July, 1891, a large portion of Great South bay in the county of Suffolk, N. Y., was owned by Helen T. and William S. Smith the infant heirs of Robert R. Smith and the town of Brookhaven, under its corporate name of The Trustees of the Freeholders and Commonalty of the Town of Brookhaven, as tenants in common. The heirs of Robert R. Smith and the town of Brookhaven each owned an undivided one-half. The entire property contained about forty thousand acres of land under water, nearly all of which was suitable for oyster culture. Much of it was capable of nourishing and maturing oysters when planted upon it, and some of it, known as oyster beds, produced spontaneously both marketable and seed oysters. The oyster beds were much the most valuable part of the land.

On or about the day mentioned, Cornelia T. Smith, as widow of Robert R. Smith, and Cornelia T. Smith and Thomas S. Strong, as general guardians of Helen T. and William S. Smith, made a lease to the plaintiffs of about seventy acres of the land for the purpose of planting, cultivating and growing oysters thereon. The lease was for the term of ten years, at an annual rent of one hundred and seventy-five dollars. The premises leased was an oyster bed known as the "Reef and Swash" bed. It was equalled in the quantity and quality of oysters it produced by but few beds in the bay. Its yield was, with few exceptions, regular each year, and comprised both seed and marketable oysters. The portion known as the "Reef" contained about thirty-five acres, and the "Swash" about the same. The lease purported to rent the whole of the seventy acres. In it the oysters planted or growing upon the premises were excepted from the covenant therein for the peaceable possession and enjoyment of the premises. Upon the delivery of the lease, the plaintiffs staked and buoyed the

premises. During the season, from the fall of 1891 to the spring of 1892, they permitted the baymen to go upon the beds and take all the natural oysters they could obtain, and they took substantially all that could be taken at the time. In the spring of 1892 marketable oysters were growing thereon, and the usual amount was taken from the premises. In September of that year seed and native marketable oysters of two and three years' growth were growing there to the usual extent. In June, 1892, the plaintiffs re-surveyed the premises, re-set the stakes and buoys thereon and dredged the "Reef." In the latter part of that month and early in July the plaintiffs spread eleven hundred bushels of shells and one hundred bushels of Virginia seed oysters over the whole premises. The quantity of shells required to properly cover the premises for the propagation of oysters was thirty-five thousand bushels. On September first there was a fine set of young oysters over the whole of the premises, which was largely the result of the plaintiffs' cultivation.

The defendants, at the times hereinafter mentioned, were inhabitants of the town of Brookhaven, as such were permitted by the town to take oysters from the premises, and all the defendants but Abram Smith were duly licensed by the town to take oysters from the undivided half of the land under water in the South bay belonging to the town, for which they paid a license fee. Between the first and nineteenth of September, 1892, the defendants entered upon the premises leased to the plaintiffs and took and disturbed, to a slight extent, the oysters that had been planted by the plaintiffs. All the oysters proved to have been taken by any of the defendants from the leased premises were marketable oysters of two or three years' growth, and it was impossible to gather the natural product from the premises without, to some extent, taking or disturbing the oysters planted by the plaintiffs. The defendants were men of small means, and unable to respond in damages to the plaintiffs. The town for many years before this action, and up to the time of this trial, had purposely permitted the premises in question and other beds in South bay to be used

by the inhabitants of the town for taking seed and market-able oysters as a means of subsistence, and had refused to lease to any one the exclusive use of any of the oyster beds. When the lease to the plaintiffs was given, they had notice and full knowledge that it was given against the will of the town of Brookhaven. The oysters taken by the defendants up to September, 1892, were taken for market purposes. When the lease was given the town was not cultivating the premises. The foregoing are substantially the facts found by the court.

As conclusions of law the court held that the premises so leased were held and owned by the town of Brookhaven and the heirs of Robert R. Smith as tenants in common ; that the lease to the plaintiffs was valid ; that the plaintiffs possessed the rights in common in the property in question which the heirs of Robert R. Smith had, and the defendants possessed those which the town of Brookhaven had, and neither possessed any other nor different rights ; that under the lease the plaintiffs had a right to take the natural oysters from the premises, but that neither of the co-tenants could legally exclude the other from entry thereon or from taking the natural product thereof ; that the planted oysters growing upon the premises between the first and nineteenth days of September, 1892, were the property of the plaintiffs, but that they could not legally prevent the defendants from entering upon the premises or from taking the natural growth of oysters thereon, and directed that the complaint be dismissed with costs.

By this action the plaintiffs sought to enjoin the defendants from entering upon the premises and taking or disturbing the oysters growing thereon, and to recover damages for such injury as they had sustained by reason of the acts of the defendants in disturbing the oysters planted by them. As there was no proof of the extent of any injury sustained by the plaintiffs, the action was in effect one for an injunction. The findings of fact made by the learned trial judge and affirmed by the General Term are fully sustained by the evidence, and, therefore, the question presented upon this appeal is

whether, upon the facts as found, the court was justified in directing a judgment for the defendants.

Both parties admit that the relation which existed between them was that of tenants in common, and consequently there was a unity in their right of possession, as that is the very nature of the estate. The parties were tenants in common of the natural oysters, and the defendants as such had the same right as the plaintiffs to enter upon the premises and remove them. As to that, there is no dispute or controversy. But the appellants contend that, having dredged the land and placed oyster shells and seed oysters upon it, they are entitled not only to prevent the defendants from interfering with the oysters thus planted, but also to enjoin them from taking the natural ones, because in doing so they would, to a slight extent, disturb those planted by the plaintiffs. That the oysters taken by the defendants were chiefly of two or three years' growth and, therefore, not the oysters planted by the plaintiffs, the court has found and the evidence establishes. The most that can be said is that the defendants in removing the oysters, as to which they were tenants in common, have slightly disturbed the oysters planted by the plaintiffs. The precise question presented is whether the plaintiffs could deprive the defendants of their right to take any of the natural oysters by scattering a few seed oysters over the premises in such a manner as to render it impossible to remove the natural ones without disturbing those planted. If they could not, then the decision of the courts below is right and should be affirmed.

The appellants rely upon the case of *Le Barron* v. *Babcock* (122 N. Y. 153). We find nothing in that case which upholds their claim. In the *Le Barron* case the land was held by the plaintiff and the party represented by the defendant as tenants in common. The plaintiff was in peaceable possession with the acquiescence of his co-tenant. The oats and hay that were taken by the defendant had been severed from the freehold by the plaintiff, and were personal chattels. In that case it was said that when in the due course of husbandry the

oats and hay were peaceably and in good faith severed from the common estate where they were grown, the title vested in the co-tenant who had severed them. It was also said that if the oats and hay were owned by the plaintiff and Mrs. House, it was not a conversion of them for the defendant, acting by her authority, to draw them away, and it was only upon the theory that the plaintiff owned them in his own right that the defendant was held liable. Neither the defendants nor their grantors ever acquiesced in the plaintiffs having any exclusive or other possession of this land, except such as they had as tenants in common with them. Nor were the oysters taken severed from the freehold by the plaintiffs so that they became personal chattels. The land and the oysters thereon belonged to the tenants in common, and neither possessed any such title to the oysters, planted or natural, as would enable him to maintain an action for trespass or conversion against his co-tenant for taking them from the land thus held in common.

It is difficult to discover any principle which would justify a court of equity in restraining the defendants from taking the oysters which they had a right to remove, simply because in doing so some slight injury might result to those the plaintiffs had strewn over the lands. As the rights of tenants in common are equal in the use and enjoyment of the estate, it is a general rule that a court of equity will not interfere between them, even to restrain waste, unless it be of a malicious character or so unusual and unreasonable as to constitute a wanton destruction of the estate. (Freeman on Co-tenancy, § 323; High on Injunctions, § 692; Beach on Mod. Eq. Juris. § 735; Smith on Equity, 418.) Another well-established rule of equity jurisprudence is that an injunction will not be granted when it will operate inequitably or contrary to the real justice of the case. (*T. & B. R. R. Co.* v. *B., H. T. & W. Ry. Co.,* 86 N. Y. 107, 125.) In this case there is no evidence that the defendants' acts in removing the oysters which were the natural products of the land, were malicious, unusual or unreasonable, while it does show that if an injunction was granted, it would operate inequitably and contrary to real

justice by depriving the defendants of their admitted rights. There is nothing to show any disposition on the part of the defendants to unnecessarily interfere with or destroy the seed oysters planted by the plaintiffs. The only interference upon their part has been such as could not be avoided without an entire surrender of their rights to the use of the property.

Under these circumstances we are clearly of the opinion that the trial court properly dismissed the plaintiffs' complaint upon the merits, and that the judgment of the General Term should be affirmed, with costs.

All concur.

Judgment affirmed. _____