## BRATTON et al. v. GRAHAM et al.*

(Division B.    Jan. 31, 1927.    Suggestion of Error Overruled Feb. 28, 1927.)

[111 So. 353.    No. 26151.]

1. PERPETUITIES. *Devise in fee prohibiting alienation until 1975, with absolute devise over on death of first taker before such date, conveyed life estate subject to be converted into fee.*

   The provision in a will providing, "All of my real estate, that I this day have  .  .  .  I give, bequeath and devise to G. E. Bratton, Caddo Mills, Texas, to have and to hold in fee simple, forever, with the proviso, however, that the said G. E. Bratton shall not grant, bargain, sell, and convey, or in any manner dispose of my real estate, or the timber thereon, or any part, parcel or quantity thereof, until the first day of January, 1975. But should said G. E. Bratton die before said date, then this limitation, relative to sale of same, shall be null and void, and the aforesaid property shall vest absolutely and indefeasibly in fee simple to the wife and heirs of the body of G. E. Bratton, share and share alike"—conveys a life estate in G. E. Bratton subject to be converted into fee on the arrival of the year 1975 if he then be living.

2. WILLS. *Court will so construe ambiguous will, if reasonably possible, as to render it not invalid under rule against perpetuities or two donee statute (Hemingway's Code, section 2269).*

   In the construction of a will where the provisions are ambiguous, the court will construe it, if it may be reasonably done, so as to make it a valid instrument, and this, although the thing that makes it invalid may be the two donee statute (section 2269, Hemingway's Code), although the purpose of the statute is to destroy intention where intention is ambiguously expressed.

3. PERPETUITIES. *Dominant purpose of will held to be restraints on alienation during beneficiary's life.*

   The dominant purpose of the will involved in this suit is to provide a home and residence for G. E. Bratton during his life, with restraints upon alienation during that life.

4. WILLS. *Void ulterior limitations on estate will not void whole provision if first can be lawfully separated; will, if possible,*

, *will be sustained in so far as it does not offend against two donee statute (Hemingway's Code, section 2269).*

Although ulterior limitations upon an estate may be void, the whole provision will not be held void if the first provision can lawfully be separated. The will will be sustained in so far as it does not offend against the statute.

5. PERPETUITIES. *Prohibition against alienation during life of first devisee is legal (Hemingway's Code, section 2269).*

A person, in making a will, may devise a life estate to a person named therein, and may prohibit alienation of the property devised in such life estate during the life of. said person, and such restraint is legal and binding so long as the period of two lives in being is not exceeded.

6. EXECUTION. *Execution sale of property worth from twelve thousand dollars to twenty-five thousand dollars on judgment for two thousand nine hundred and seventy-five dollars is void for inadequacy of consideration.*

Where a contract is made between an attorney and client in which it is provided the fee named shall not exceed one-fourth the value of the property, and the attorney afterwards obtains judgment for two thousand nine hundred and seventy-five dollars and costs, and causes execution to be levied upon the property of client, and sold for six hundred dollars, which property is valued at from twelve thousand dollars to twenty-five thousand dollars, the sale will be declared void because of inadequacy of consideration.

---

*Corpus Juris-Cyc. References: Executions, 23CJ, p. 678, n. 93; Perpetuities, 30Cyc, p. 1473, n. 38 New; p. 1499, n. 73, 74; Wills, 40Cyc, p. 1407, n. 97; p. 1408, n. 98; p. 1418, n. 48. As to effect on prior takers of the failure of a gift because it violates the rule against perpetuities, see annotation in 20 L. R. A. 509. Prior estate as effected by gift void for remoteness, see annotation in 28 A. L. R. 375; 21 R. C. L. 320; 4 R. C. L. Supp. 1411; 5 R. C. L. Supp. 1153; 6 R. C. L. Supp. 1261.

APPEAL from chancery court of Lafayette county.

HON. N. R. SLEDGE, Chancellor.

Action by G. E. Bratton and another against Will Graham and others, attacking a judgment and conveyance thereunder. From a judgment for defendants, plaintiffs appeal. Reversed and remanded.

*Bratton & Mitchell* and *E. O. Sykes,* for appellants.

I.    This will was evidently written by a lawyer who was familiar with the Two Donee Statute. It is perfectly legal to prohibit Bratton from selling this land and timber. In fact, a succession of two donees then living could have been prohibited from selling. On the other hand, an unqualified prohibition to sell before 1975 would violate the statute.

We submit that the testator evidently knew and understood this fact because his particular prohibition is solely directed at Bratton. This theory is certainly a reasonable one and would uphold the legality of the will through the devises to the wife and heirs of Bratton and this is as far as we are now called upon to go.

For the authorities, see: *Schlater* v. *Lee,* 117 Miss. 701 at 707; *Scott* v. *Turner,* 137 Miss. 636; *Smith* v. *Muse,* 134 Miss. 827; *Reddoch* v. *Williams,* 129 Miss. 706; *Brattle Square Church* v. *Grant,* 63 Am. Dec. 725, 3 Gray 142.

II.    *Sale to James and Phil Stone.* The consideration paid was from one-twentieth to one-fiftieth of the value of the property. This consideration is so grossly inadequate that a court of equity will set it aside. *Hesdorffer* v. *Welsh,* 127 Miss. 261, is express authority for this.

Again, Bratton cannot alienate this property before 1975. This means a voluntary alienation by him. 2 C. J., page 1035 *et seq.* See especially note on page 1037 as to what are voluntary and involuntary alienations. Under this note (g) an execution sale was held to be an involuntary alienation in *Hammel* v. *Ins. Co.,* 54 Wis. 72, 41 Am. Rep. 1.

*James Stone & Son, Wilson, Gates & Armstrong, Rufus Creekmore* and *J. B. Fontaine,* for appellees.

The common-law rule against perpetuities is in full force in Mississippi. *Nichols* v. *Day,* 128 Miss. 764. The

principal and plainest objection to the limitations in this devise was its offense against the common-law rule against perpetuities. It has, therefore, always been our idea that the principal object and the purpose of the will was neither as claimed by the heirs of Bratton, appellees, and held by the chancellor; to-wit; to tie up the sale of the timber until 1975; nor, as claimed by the appellants, to give a life estate to G. E. Bratton and remainder to his wife and children; but a medium position between the two.

Our view is that the principal object of the device in the will was to give the property to G. E. Bratton, and the only object of the limitations over was to prevent the alienation of the property until 1975. So, while we agree that the principal object of all the limitations after the estate (called in fee simple) to Bratton was to prevent the alienation of the land and timber, we cannot agree that it was the principal object of the will, the devise, or even the principal purpose of the testator. It comes within that class of cases where the limitation is not good at all because the very idea of the limitation is defeated but still the grant ahead of the limitation is good. It is just like an estate in fee tail. The estate in tail is good but the limitations carrying that estate to remoter generations is bad. The tenancy in tail becomes a fee simple.

*Reddoch* v. *Williams,* 129 Miss. 730, cited by opposing counsel, while in point, is not in point for him, but for us, for the reason that he relies upon the quotation from *Gully* v. *Neville,* 55 So. 289, which states that if the ulterior limitation is void, the will may be saved by dropping that ulterior limitation and leaving the rest of the will to stand.

We, therefore, claim that the true law of this will is that a good estate in fee was expressly conveyed to Bratton and that for the purpose of limiting his right of alienation, ulterior limitations were devised, which ulterior limitations were void. They were not void in

part, but as a whole, because the idea and purpose of all the limitations was to tie up the estate until 1975, which was longer than the law permitted. We, therefore, think that although the chancellor gave the wrong reason therefor, under the situation that arose in this case, the decree below should be affirmed.

*The James Stone and Son judgment.* An attack is made on the title of James Stone and Son upon the ground that they bought in the property for a grossly inadequate price and the price is treated as six hundred dollars instead of their whole debt, about thirty-two hundred and fifty dollars.

But Stone and Son neither levied upon, bought, nor had sold an undoubted title, but it is even now claimed no title at all. Notwithstanding that fact, however, Stone and Son always offered to return the property if Bratton would do equity and pay them the debt for which the execution was levied. *Hesdorffer* v. *Welsh,* 127 Miss. 261, cited by appellants, is not an authority for their position in this case. That was a sale of a good title to land made under a trust deed.

Argued orally by *E. O. Sykes,* for appellants, and *Rufus Creekmore,* for appellees.

ETHRIDGE, J., delivered the opinion of the court.

H. H. Graham, formerly of Lafayette county, Miss., now deceased, made a will disposing of his property, in which he made various devises and bequests to different persons. In item 7 of the will he disposed of real estate as follows:

"Item 7. All of my real estate, that I this day have, or that I may have, possess or acquire at my death, I give, bequeath, and devise to G. E. Bratton, Caddo Mills, Texas, to have and to hold in fee simple forever; with this proviso however, that the said G. E. Bratton shall not grant, bargain, sell, convey, or in any manner dispose of

my real estate, or the timber thereon or any part, parcel or quantity thereof until the first day of January, 1975. But should said G. E. Bratton die before said date, then this limitation, relative to sale of same, shall be null and void, and the aforesaid property shall vest absolutely and indefeasibly in fee simple to the wife and heirs of the body of G. E. Bratton, share and share alike. If G. E. Bratton, his wife and all the heirs of his body should die before the date aforesaid, then my real estate shall descend, share and share alike, to the four legatees designated in item 6. But should he, his wife or any one or more of the heirs of his body be living on aforesaid date, or descendants of the heirs of his body, be living, then he, she or they take an absolute and indefeasible title to aforesaid real estate. My purpose in making this limitation is to prevent the sale of either my lands or my timber on said lands until the first day of January, 1975. I know that G. E. Bratton is now a resident of Texas, and would in all probability, if this provision were not made, proceed to sell said lands and timbers to my enemies who have continually and constantly tried to purchase same from me, but which I have just as often and strenuously refused to sell to them. My wish is that G. E. Bratton move on said property and live and die on same, if convenient and expedient, and in the event it is not such for him, then it is my will that the place and timber remain intact, complete and entire, just as they are now held by me, subject to the limitations above set forth.''

And item 8 of the will provides as follows:

''Item 8. Should any of the limitations, stipulations, restrictions or provisions set forth in item 7 be violated, abused or disregarded, then it is my will and wish that all of my real property, divest and be alienated out of and from G. E. Bratton and his heirs, and that it descend according to the statute of descent and distribution. It is furthermore provided that the limitations mentioned in item 7 shall not be defeated and the property pass by

any trick, wile, subterfuge, or evasion, but that the letter of the limitation shall be followed to the letter.''

Subsequent to the death of Graham, G. E. Bratton employed a firm of lawyers in Oxford, James Stone & Son, to file a suit to contest the will, but abandoned the suit before it was construed by the court. The attorneys seem to have been employed on some kind of contingency basis, and were not willing to discontinue the suit without payment of the fee for the services for which they were employed. Bratton, however, did not pay them, and they filed suit in the county against Bratton for the fee, and recovered judgment for two thousand nine hundred seventy-five dollars, which judgment was not paid by Bratton, and the lands embraced in item 7 of the will were levied upon and sold under execution at and for the sum of six hundred dollars. Subsequently these attorneys sold the interest obtained under the execution to the persons named in item 6, to whom was willed all of the personal property, except certain specific legacies. These persons gave a deed of trust upon the lands embraced in item 7 of the will to these attorneys for the full amount recovered by the judgment. Thereafter, G. E. Bratton, his wife and children, filed this suit against the defendants herein attacking the judgment and conveyance thereunder as being void: First, because no process was served upon him and the judgment was void for that reason; second, if the judgment was void, the sale thereunder was void, first, because the sale was for a grossly inadequate amount, and, second, that, under the terms of the will, G. E. Bratton's interest could not be sold and would not be subject to a sale under execution, and that it was not a voluntary sale by Bratton, and a sale under it, even if valid, would not divest the estate vested in G. E. Bratton by said will.

The chancellor held that the judgment was valid and the execution sale under it good, but also held that items 7 and 8 of the will were invalid, constituting an unlawful restraint upon alienation in violation of the two donee

statute (Hemingway's Code, section 2269), and the rule against perpetuities, holding that it was the dominant purpose of the testator to restrain alienation of the land until 1975, and, that being the dominant purpose, the whole items were void.

The first question for decision is whether or not the chancellor was correct in so holding, and what the real meaning of the provision is, and what was the dominant purpose of the testator in writing this provision.

It will be seen from reading the above provision that all the real estate owned by the testator at his death was devised to G. E. Bratton, of Caddo Mills, Tex., to have and to hold in fee simple forever, with the provision that said G. E. Bratton should not bargain, sell, or convey, or in any manner dispose of said real estate, or the timber thereon, or any part or parcel thereof, until the 1st day of January, 1975, but should the said G. E. Bratton die before said date, then the limitation relative to sale of same shall be null and void, and the aforesaid property to vest absolutely and indefeasibly in the wife and children of said G. E. Bratton, share and share alike.

This provision, we think, is clear that G. E. Bratton was to have a life estate in said lands and timber, so long as he lived, with the provision that if he lived until 1975, this life estate would be converted into a fee-simple estate, but if he should die before 1975, it would vest in his wife and children, share and share alike. Of course, it is possible that G. E. Bratton could live until 1975. It may be that the probabilities are against his living so long; but even if he should not live so long, the estate would become a fee simple estate at his death in his wife and the heirs of his body, share and share alike.

Up to this point, it is clear to our minds that the will does not violate the rule against perpetuities or the two donee statute.

Under the authorities in this state, where an estate is vested in a class of persons, for life, it is held to vest in them as a class with the longest liver as being the meas-

ure of the life estate under the two donee statute. However, in the present case, if the will stopped there, it would vest in fee simple and be a devise, and certainly would not violate the rule against perpetuities or the two donee statute.

It is provided in item 7:

"If G. E. Bratton, his wife and all the heirs of his body should die before the date aforesaid, then my real estate shall descend, share and share alike, to the four legatees designated in item 6. But should he, his wife, or any one or more of the heirs of his body, be living, then he, she or they take an absolute and indefeasible title to aforesaid real estate. My purpose in making this limitation is to prevent the sale of either my lands or my timber on said lands until the first day of January, 1975. I know that G. E. Bratton is now a resident of Texas, and would in all probability, if this provision were not made, proceed to sell said lands and timbers to my enemies who have continually and constantly tried to purchase same from me, but which I just as often and strenuously refused to sell to them. My wish is that G. E. Bratton move on said property and live and die on same, if convenient. And in the event it is not such for him, then it is my will that the place and the timber remain intact, complete and entire, just as they are now held by me, subject to the limitations above set forth."

This provision clouds the whole item and makes the meaning uncertain and ambiguous.

It seems to us, however, in such case, the rule, where the provisions of a will are ambiguous, that the court will adopt the construction which makes the instrument lawful, will come into operation.

We think, from a painstaking consideration of the will, that the language used therein denotes that the dominant purpose of the testator was to provide for G. E. Bratton a home for his lifetime, and to induce him to move upon that home and live upon it. The express language of the first part of the provision is that in case

G. E. Bratton should die before 1975, then the limitation against the sale and the alienation against the land should be null and void, and the property vest absolutely and indefeasibly in fee simple in the wife and heirs of the body of G. E. Bratton. Testator's purpose, as stated in the will, in making those restrictions, was to prevent G. E. Bratton from selling the lands as testator believed he would do unless restraints were imposed upon him. These restraints were not imposed upon the wife and heirs of the body of G. E. Bratton either in express terms or by any fair implication. It is true that the will provides that if Bratton, his wife, and all of the heirs of his body should die before the date aforesaid, then the real estate should descend, share and share alike, to the four legatees named in item 6 of the will.

It was, of course, possible for the wife and children of G. E. Bratton all to predecease him, prior to 1975, and then for Bratton himself to die prior to that date, and we think the purpose of the testator in making this provision was but a poorly expressed provision against such contingency. If G. E. Bratton lived, and the wife and children should die, before he did, and he should not live until the estate was converted into a fee-simple in him in 1975, the land, of course, would then revert to the testator's heirs at law generally, who he, for some reason, did not want to have it.

Coming to item 8, we think the purpose of the testator in imposing these restrictions and limitations was to divest the land out of G. E. Bratton in case he should convey the lands in violation of the restrictions. The testator was apprehensive that the law might, under some conditions, avoid the restrictions he had imposed upon it, and that by some scheme, wile, subterfuge, or evasion the property might pass through some legal proceeding, and be divested out of G. E. Bratton through some contractual relation with him. At this time, none of the contingencies provided for have happened, and G. E. Bratton, his wife, and children are still living.

Section 2269, Hemingway's Code, known as the two donee statute, reads as follows:

"Estates in *fee tail* are prohibited; and every estate which, but for this statute, would be an estate in *fee tail,* shall be an estate in *fee simple*; but any person may make a conveyance or a devise of lands to a succession of donees then living, not exceeding two, and to the heirs of the body of the remainderman, and, in default thereof, to the right heirs of the donor, in *fee simple.*"

In *Reddoch* v. *Williams,* 129 Miss. 706, 92 So. 831, it is held as follows:

"When a part only of a gift is invalid by reason of the rule against perpetuities, and the various parts are independent and separable, and the remote parts are not necessary for the carrying out of the common or general purpose of the instrument, those which violate the rule against perpetuities may be rejected, and those which do not upheld."

At page 731 of the Mississippi report (92 So. 834), of the case of *Reddoch* v. *Williams, supra,* the court quoted from the case of *Henry* v. *Henderson,* 101 Miss. 751, 58 So. 354, as follows:

"On page 760 of 101 Miss. on page 357 of 58 So., it is said: 'In this connection we desire to say that, though an ulterior limitation of the estate devised is void, the whole provision, on that account, will not be declared void; but, upon the other hand, that portion of the will will be sustained in so far as it does not offend against the principle of perpetuities.'"

On the same page quoting from 22 A. & E. Encyc. of Law (2d Ed.), p. 723, the court said:

"Where an interest of estate is given by a deed or will, with a limitation over on a specified contingency, such limitation, if it violates the rule against perpetuities, is for the purpose of determining the effect on the prior disposition of the property to be considered as stricken out, leaving the prior disposition to operate as if the limitation over had never been made. . . . In accord-

ance with the general rule which has just been stated, where a disposition of property or of an interest therein is followed by a limitation over, the prior disposition is not invalidated by the fact that the limitation over is void for remoteness.''

In the same opinion, quoting from 21 R. C. L. 320, section 54, it was said:

''When a part only of a gift is invalid by reason of the rule against perpetuities, and the invalid limitation is an essential part of the general scheme of the will or gift, the several parts of the devise or grant are treated as inseparable, and the whole is adjudged void. But where the various provisions of the will are in fact independent, and not for the carrying out of a common or general purpose, those which are contrary to the rule may be rejected, and the valid provisions upheld. The test is whether the rejected parts may be expunged without essentially changing the general testamentary scheme.''

In the case of *Lazard* v. *Hiller* (No. 26093), decided January 10, 1927, 110 So. 855, the court, speaking by the Chief Justice, said:

''The two donee statute, like the rule against perpetuities, is not a rule of construction or a test by which to determine intention; 'its object is to defeat intention. Therefore every provision in a will or settlement is to be construed as if' the statute did not exist (Gray, Rule against Perpetuities [2d Ed.], section 629), and then to the provision of the will or settlement so construed, the statute must be applied, and whatever portion thereof is violated by it must be rejected, but the remainder thereof, if otherwise valid, should be enforced. In other words, 'If future interests created by any instrument are avoided by (the statute or) the rule against perpetuities, the prior interests become what they would have been had the limitation of the future estates been omitted from the instrument.' . . . And 'when there is a good absolute gift, and the settlor or testator goes on, in an additional clause, to modify the gift, and, by

modifying it, makes it, in part, too remote, the modification is rejected in toto, and the original gift stands.' Gray, Rule against Perpetuities [2d Ed.], section 423; *Smith* v. *Muse,* 134 Miss. 836, 98 So. 436; *Nicholson* v. *Fields,* 111 Miss. 638, 71 So. 900.   Tested by this rule, the will, in so far as it devises the land to Mrs. Hiller for life with remainder after her death to her children in fee, does not violate the two donee statute, and, if the limitations over on the death of Mrs. Hiller's children before becoming twenty-one years of age are void, as the appellees contend, they would simply be inoperative, with the result that the estate in fee devised to these children would become absolute, for the reason that the provision by which it was to be reduced to a life estate on the happening of a certain event is eliminated by the statute from the will." *Smith* v. *Muse,* 134 Miss. 836, 98 So. 436; *Schlater* v. *Lee,* 117 Miss. 701, 78 So. 700.

In *Crawford* v. *Solomon,* 131 Miss. 792, 95 So. 686, we held that a testator devising a life estate to his wife may prohibit alienation of the property in which the life estate existed during her life, and that such a provision is legal and binding; that section 2765, Code of 1906 (section 2269, Hemingway's Code), does not prohibit it, and such section declaring the policy of the state in that regard is the full measure of restraint against alienation, following *Leigh* v. *Harrison,* 69 Miss. 923, 11 So. 604, 18 L. R. A. 49.

We are therefore of the opinion that the chancellor erred in holding that the whole provision of item 7 is void, but that by such provision, G. E. Bratton acquired a life estate subject to be converted into a fee-simple estate with the arrival of the year 1975, should he then be living, and, if not, a modified estate which will pass, at his death, to his wife and children in fee simple.   The other limitations contained in item 7 of the will could only come into force in event the wife and children of G. E. Bratton should predecease him, and if he died prior to 1975.

With reference to the judgment obtained by James Stone & Son, attorneys, and the sale under execution, this sale was void because of the gross inadequacy of the amount received for the land. The lowest estimate placed upon this land is twelve thousand dollars, and it runs to twenty-five thousand dollars. In the record there is a letter from James Stone to G. E. Bratton, which the latter claims never to have received, but which sheds light upon the value of the place, and the arrangement between Bratton and said parties, which letter is as follows:

"You made no defense to the suit I brought against you, so at this term of court I recovered a judgment against you for two thousand nine hundred seventy-five dollars and costs. It is not my desire to do anything more than carry out our original agreement, and if this judgment is for more than one-fourth of what can be gotten out of the property, I am perfectly willing to accept one-fourth of what you can get net, but I could not permit you to sit down and refuse to do anything or let me do anything in order to straighten this matter out, and that is why I brought the suit. I shall not issue execution for the present. Will give you time to write me what you are willing to do—whether or not you are willing to accept my proposition."

According to this letter, the property was worth four times the amount of the judgment, and yet we find the property bringing at said sale only about one-fifth of the amount of said judgment. It would be utterly unconscionable to permit a sale of property for one-twentieth to one-fiftieth of its value to be approved, and thus deprive the property owner of his property, for an amount shocking to the enlightened conscience. We think the case of *Hesdorffer* v. *Welsh,* 127 Miss. 261, 90 So. 3, is authority for this proposition.

We do not think the obtaining of the judgment and the sale thereunder was an alienation of the property in violation of the terms of the will. Consequently, the judgment of the court below must be reversed.

Of course, the chancellor settled the validity of the judgment on the disputed evidence, and the judgment stands as a live and valid obligation.

The judgment of the court below will therefore be reversed and remanded for further proceeding in accordance with this opinion.

*Reversed and remanded.*