GREENWOOD LODGE, No. 118, I. O. O. F., *v.* HYMAN.

(Division B.   Nov. 29, 1937.)

[177 So. 43.   No. 32914.]

Jordan, Antoon & Peteet, of Greenwood, for appellant.

H. C. Mounger, of Greenwood, for appellant.

Alfred Stoner, of Greenwood, for appellee.

Argued orally by **H. C. Mounger**, and **R. A. Jordan**, for appellant, and by **Alfred Stoner**, for appellee.

**Ethridge, P. J.**, delivered the opinion of the court.

Appellee, complainant in the court below, filed a bill in the chancery court of Leflore county to restrain appellant, Greenwood Lodge, No. 118, I. O. O. F., from erecting a building in the city of Greenwood upon a lot described in the bill which Minnie L. Attlesey conveyed to F. J. Dobson; the deed therefor containing certain restrictions and limitations. The bill also alleged that appellee, Mrs. Sarra L. Hyman, had secured a deed to the adjoining property lying north of the Dobson property, and that appellant had acquired title to the Dobson property, with the same restrictions imposed on Dobson, on April 13, 1907, and was starting to erect a one-story building thereon. The bill then prayed for an injunction to restrain the building started by appellant. The bill was filed on April 2, 1936, but no writ of injunction was issued until the final decree in this cause on March 31, 1937. The bill set forth, in general terms, the conveyances referred to, and copies thereof, in the court below, were filed with the bill. Each of the

mesne conveyances referred in the deeds was set forth, and an attempt was made to make the restrictions and limitations contained therein effective.

The answer of respondent, I. O. O. F., denied that Minnie L. Attlesey conveyed to Simon Hyman and Joe Stein all the privileges, rights, covenants, and restrictions stipulated for in the Dobson deed, as charged in the bill; denied that the ownership of the I. O. O. F., defendant in the court below, of the Dodson land is subject to the restrictions contained in the Dodson deed, and denied that respondent is bound by said restrictions, or is now erecting a building which in no way conforms to the said restrictions, and is in absolute violation and in utter disregard of said restrictions. Said answer further denied that unless respondent is restrained from erecting a one-story filling station on said lot, that appellee will suffer irreparable injury if same is erected; denied that the construction and erection of said building is in violation of said restrictions; that all material that may be put on said lot should be removed; and denied that appellee is entitled to an injunction against appellant compelling it to remove such material from said lot. By amendment to said answer, appellant says that in the year 1912 the said Simon and Sarra L. Hyman, without waiting for any building to be erected on said Odd Fellows' lot, erected the brick building now occupied by Sarra L. Hyman, on their lot north of the Odd Fellows' lot; that the object of the requirement in the Dobson deed was to enable the north wall of any building to be erected on said Odd Fellows' lot to be used as a south wall for any building to be erected on said Hyman lot, and that the building on said Odd Fellows' lot was not erected until April, 1936, many years after the erection of the building on the Hyman lot, and that appellee has not, nor will she in the future, suffer any damage by reason of the erecting of the building on the Odd Fellows' lot. The amendment to the answer then says that the object of said restrictions has ceased, the con-

ditions being no longer required, and that the Hymans have, by their actions, waived said restrictions.

The deed from Minnie L. Attlesey to F. J. Dobson, above mentioned, was executed on April 13, 1907, and, among other things, recites that: "It is understood, agreed and stipulated, as a material part of the consideration for this conveyance, which is made upon the conditions that no building shall ever be erected on said premises unless such building be of brick, stone, concrete, or some similar material, and be, at least, two stories high, that the North wall of any such building, which said North wall shall be, at least, two stories high its full length, shall be wholly upon the said premises and shall have no windows or other openings therein below the windows of the second story; that the window sills of the second story window shall be at a height from the ground as great, at least, as is now usual for second story window sills in brick business buildings in said City of Greenwood; that I shall have the right to use said North wall as high as, but no higher than, the window sills of the said second story window therein, as a South wall for any building which may be erected on that certain tract of land owned by me fronting twenty-two and one-half feet on Main Street, and running back a rectangular depth of one hundred feet lying North of and adjacent to the premises conveyed by this instrument; that in the event the North wall of any building erected, as hereinbefore provided, on the premises conveyed by this instrument, shall be located South of the Northern boundary line of the premises conveyed by this instrument, I shall have the right to use, in connection with said wall and in order to secure the benefits of the use thereof as hereinbefore provided, the space intervening between said North wall as located and the Northern boundary line of the premises conveyed by this instrument for the erection and maintenance on said space and the tract of land hereinbefore described lying North of the premises conveyed by this instrument of such

building as may be erected thereon; that in the event of the destruction or removal of any such building erected, as hereinbefore provided, the premises conveyed by this instrument, the same stipulations as to the construction and the same right to the use of the North wall thereof and the space between such North wall and the Northern boundary line of said premises shall attach to any building subsequently erected on said premises; that I shall have the right, at any time, to transfer the rights and privileges herein reserved by and granted unto me; and that the said F. J. Dobson, for himself and those holding under him the premises conveyed by this instrument hereby covenant and undertake faithfully to observe the said rights and privileges, it being understood that the said F. J. Dobson does not undertake or agree to erect any building upon the premises conveyed by this instrument, but does agree and covenant that any building which may be erected thereon shall conform to the conditions and stipulations herein contained.''

The deed from the Attleseys to Simon Hyman and Joe Stein dated June 1, 1910, among other things, recited as follows: ''It is understood, agreed and stipulated, as a material part of the considerations for this conveyance, and this conveyance is made upon the conditions, that the said Simon Hyman and Joe Stein will faithfully observe and keep all of the covenants and agreements of Minnie L. Attlesey with said F. J. Dobson relative to the construction or erection of a building or buildings, upon the premises herein described, which said covenants and agreements are set forth and described in the above described deed from said Minnie L. Attlesey to the said F. J. Dobson and that no building or structure, of any kind whatever, shall ever be constructed or erected upon said above described premises, unless such building be of brick, stone, concrete or some similar material and having a tin, metallic or slate roof, that no building shall be constructed upon said premises to a height greater than the bottom of the window sills of the sec-

ond story windows in the South wall of the building known as the Attlesey building, situate on the North line of the above described premises; and that no building, when erected upon said premises shall be used as a church or place of worship; and it is understood and agreed that the said Simon Hyman and Joe Stein, for themselves and those holding under them the premises conveyed by this instrument, hereby covenant and undertake faithfully to observe the stipulations and conditions herein contained, and agree that all of the provisions, restrictions and conditions contained, or referred to in this conveyance may be enforced by the said Minnie L. Attlesey and by those holding by, through or under her, any land adjoining the premises herein conveyed.''

The building erected by appellant was two feet higher than the building owned by appellee on the lot immediately north of appellant's lot, and the north part of this building which was used as a filling station contained no windows, or other openings, and the other part of the building was not as high as buildings erected in Greenwood in 1907 containing two stories. It was shown in the evidence that the height of the building erected by the Odd Fellows is only two feet higher than the one-story Hyman building, which had been erected many years prior to 1912. It further appears that the appellant, I. O. O. F. Lodge, No. 118, had arranged for the release of the restrictions and had secured a contract from Minnie L. Attlesey to that effect. It was not shown by the evidence what the height of second story windows in other buildings in Greenwood in the year 1907 were, and in the decree there was no requirement for the building to be of a specified height, but it was left unascertained, but the appellant was directed to tear down and remove the building, or rebuild to the required height, as buildings existed in Greenwood in 1907. There was no proof of any specific damage that would flow to Mrs Hyman from

a violation of the restrictions in the above referred to deeds.

There were no windows in the north side of the Odd Fellows' building, and it does not appear from the proof that had the building been erected two stories high the windows would have been any higher than the north wall was. The deed above mentioned to Dobson, and from him through mesne conveyances to the appellant, did not require Dobson or his grantees to erect any building, but merely that if he did erect one, it should be two stories high, and that the walls below the second story should be solid, and it is manifest that the purpose of the restrictions in each of the above-mentioned deeds was to give the grantor, Minnie L. Attlesey, the right to use the north wall of the building, if any should be erected, for any building that the grantor, or those holding under her, might erect. Mrs. Hyman had erected a brick building, and as there was no showing of any purpose to erect any other building than the one she now has, it does not appear that she would suffer any injury by the appellant's building other than the right to use the north wall as a party wall for any building she might, in the future, erect. She certainly suffered no pecuniary loss. Her alleged injury is merely esthetical or sentimental, and there is no proof to show that the value of her property was damaged in any pecuniary way.

So far as this record shows, this suit was filed to enforce a capricious right to gratify a sentimental whim.

The granting of an injunction to restrain the use of property should not be allowed except where the parties are irreparably injured in a pecuniary way. In 32 C. J., section 29, page 49, it is said that: "Subject to some limitations hereafter considered, in order to entitle a person to injunctive relief, whether prohibitory or mandatory in its nature, he must establish as against defendant an actual and substantial injury; and this is true whether the injury is single or continuous, and especially is this true where in addition, the writ would op-

erate oppressively to true justice. In other words, a complainant is not entitled to an injunction where he can show no injury to himself from the action sought to be prevented, where the damage is so small, and the right so unimportant as to make the case a trivial one, or is technical and inconsequential, or fanciful and sentimental. . . . " See, also, 14 R. C. L., page 307, sec. 5; Power v. Ratliff, 112 Miss. 88, 72 So. 864, Ann. Cas. 1918E 1146; Parrot Silver & Copper Co. v. Heinze, 25 Mont. 139, 64 P. 326, 53 L. R. A. 491, 87 Am. St. Rep. 386, and Mott v. Underwood, 148 N. Y. 463, 42 N. E. 1048, 32 L. R. A. 270, 51 Am. St. Rep. 711.

In the case at bar, the carrying out of the decree of the court below would inflict great expense, trouble, and hardship upon the appellant, and would confer no benefit, of any substantial nature, upon the appellee, and a court of equity will not enforce a decree imposing a hardship upon one party to merely gratify a sentimental whim of another party.

Furthermore, the restrictions set out in the deeds are not limited in time, and fix no period for termination thereof. It is clear from the deeds above quoted from that the restrictions are perpetual in duration, which is clearly contrary to public policy, and is forbidden in this state. See Leigh v. Harrison, 69 Miss. 923, 11 So. 604, 18 L. R. A. 49; Crawford v. Solomon, 131 Miss. 792, 95 So. 686; Bratton et al. v. Graham et al., 146 Miss. 246, 111 So. 353; Reddoch et al. v. Williams et al., 129 Miss. 706, 92 So. 831. In that case, and in others, there was sufficient data to determine at which point the limitation would be cut off, but in the case at bar there is nothing we can take hold of that would determine the point at which the restrictions in the deeds would become invalid. By their very language, the restrictions are perpetual, and we have no means of judging from the conveyances, any time at which they cut down for exceeding the time period allowed. In Burdick on Real Property, page 386, it is said that: "Unless otherwise

provided by statute, no future contingent and indestructible interest in property can, in general, be created which must not necessarily vest within twenty-one years, exclusive of periods of gestation, after lives in being.''

There is no period of time, or circumstances, from which a reasonable period can be determined in the case at bar, and consequently the court below was in error, and the judgment will be reversed and the cause dismissed.

Reversed, and cause dismissed.