MARTIN, EXECUTOR, ETC. *v.* ESLICK, et al.

No. 40201 November 12, 1956 90 So. 2d 635

*Dent, Ward & Martin,* Vicksburg, for J. Gaillard Martin, individually, and as executor of the estate of Anna F. C. Martin, deceased, and as testamentary trustee under said will, appellant.

*Gwin & Kuehnle,* Natchez, *Teller & Biedenharn,* Vicksburg, for appellant;

*Eaton, Cottrell* and *Galloway,* Gulfport, *Wells, Thomas* and *Wells,* Jackson, for appellees.

HOLMES, J.

This appeal involves the construction of the last will and testament of Mrs. Anna F. C. Martin, deceased. The decedent died on December 3, 1942. On January 2, 1943, there was admitted to probate in common form in the Chancery Court of Harrison County five certain instruments of writing, purporting to be the last will and testament of the decedent. These instruments were wholly written and subscribed by the decedent in her own hand writing and are as follows:

"Know all men by these presents I Anna F. C. Martin of the town of Pass Christian, Harrison County, State of Mississippi, being of sound and disposing mind, memory and understanding, do hereby make and declare, this to be my last will and testament made by me. I direct all my just debts, including my funeral expense and those of my last illness and the expense of the administration of my estate, to be paid by my Executors and Trustees, hereinafter named, out of the first money coming into their hands and available therefor.

''I hereby nominate, constitute and appoint my three sons, Benson B. Martin, Gailliard, Francis C. Martin, Executors of my last will and testament.

''(Signed) Anna F. C. Martin

2.

''And I especially direct that they the said Benson B. Martin, Gailliard, Francis C. Martin shall not be required to render any account to any court of their acts as such Executors and Trustees, and not required to give any bond. I hereby make my sons Benson B. Martin, Gailliard and Francis C. Martin my trustees to hold and manage the interest of my daughter Anna F. C. Eslick, in the event of her death they to continue as trustees for son and grandson, Frederick Martin Eslick. They Benson B. Martin, Gailliard and Francis C. Martin Trustees without Bond or reporting to any court. They or either one to name and appoint successors they know who would be agreeable to me.

''Should Frederick Martin Eslick survive, outlive, his mother, Anna F. B. Martin Eslick and dying without children, the interest then to go to my direct blood heirs.

''(Signed) Anna F. C. Martin

3.

''Benson B. Martin having received before this writing liberally from his Father and me. Eugene Martin and J. Gailliard Martin and Francis C. Martin and Anna F. B. Martin Eslick to share equally in my interest in Blakely Redwood interest. Anna F. B. Martin Eslick to have my interest in Berkely, also the Pass Christian property, or if sold, what was invested therefrom. I have above stated Benson B. Martin, Gailliard and Francis C. Martin to be Executors and Trustees without bond nor required to account to any court. My small property all located in Mississippi State I feel will be justly disposed according to

my wishes, already expressed. Anna F. B. Martin Eslick to have my personal property, giving her Brothers as she sees fit.

"(Signed) Anna F. C. Martin

"This day A. D. 1933
March 24, 1933
Codile to my will of March 24, 1933

"I leave the disposal portion of all real estate in Louisiana to my daughter, Anna and require son, Benson, to collect the advances previously made him against his legitime therein.

"Written, dated and signed by me at Pass Christian, Miss., October 27, 1936.

"(Signed) Anna F. C. Martin

"This day June 8, 1936 A. D.

"I write this my last will and testament, my will previous written will give some details. Not a cent of my little property personal and real can be inherited by either Anna or Frederick Martin Eslick until five (5) years after Major Frederick Murphy Eslick has been dead.

"I solemnly command my sons Benson, Eugene, Gailliard and Francis, also my sister Caroline Ferguson Blake to carry out my commands.

"(Signed) Anna F. C. Martin

"Pass Christian, Miss.
June 8, 1936

"June 8, 1939

"Know all here by these presents, I Anna F. C. Martin of the town of Pass Christian, Harrison County, State of Mississippi. Being of sound and disposing mind, memory, and understanding do hereby make and declare this my last will and testament made by me.

"I direct all my just debts, including my funeral expenses, and those of my last illness and the expenses of the administration of my estate to be paid by my Executors and Trustees hereinafter named out of first

money coming into their hands and administer therefor. I hereby nominate, constitute and appoint my three sons, Benson B. Martin, J. Gailliard Martin, Francis C. Martin, Executors of my last will and testament. I expressly direct that they the said Benson B. Martin, J. Gailliard Martin and Francis C. Martin that they should not be required to render any account of their acts to any Court as such Executors and Trustees and not required to give any Bond. They to hold and manage the interest of my daughter, Anna F. B. Eslick in event of her death they to continue Trustees for Frederick Martin Eslick, in event of his death to be inherited by my immediate heirs. The division of my small property in Louisiana and Mississippi the details of which division I have given my Executors elsewhere.

<blockquote>"(Signed) Anna F. C. Martin</blockquote>

<blockquote>"Pass Christian, Miss.<br>May 4, 1942</blockquote>

"In leaving to my son Eugene Martin 1/4 one fourth of my interest in Redwood Plantation. It is to be understood he does not convey it, in any manner, away from my blood—that is to no one out or away to any one, unless to one of his brothers Gailliard or Francis Martin or his sister Anna F. M. Eslick or her son Frederick Martin Eslick. I feel I have this legal right—having in many ways given him and expended on him, many and other benefits.

<blockquote>"(Signed) Anna F. C. Martin"</blockquote>

Letters testamentary were duly issued to J. Gailliard Martin and Francis C. Martin, who were the then surviving executors named in the will, the other named executor, Benson B. Martin, having predeceased the decedent on March 9, 1941.

No proceeding to contest the validity of the will was filed and any such proceeding is now barred by the limitation of two years after probate without notice

prescribed by Section 505 of the Mississippi Code of 1942. Francis C. Martin, one of the executors named in the will, died on June 25, 1945, and J. Gailliard Martin became the sole surviving executor and trustee in the will.

On April 4, 1949, more than six years after the probate of the will, J. Gailliard Martin, individually and as executor of the estate of the decedent, and as testamentary trustee for Anna F. B. Martin Eslick, filed his petition in the Chancery Court of Harrison County seeking a construction of the will and instructions as to his duties and authority as testamentary trustee. All parties interested were made or became parties to the proceedings. After a hearing on September 20, 1949, and after taking the case under advisement, the chancellor, on August 4, 1955, rendered and entered his final decree construing the will of the decedent. From this decree all parties have appealed except Anna F. B. Martin Eslick and her son, Frederick Martin Eslick, who are the appellees here.

The facts as disclosed by the testimony and the admissions in the pleadings are not in dispute. The testatrix, at the time of her death, was about 89 or 90 years of age, and was a widow, her husband, Eugene Martin, Sr. having died in the year 1915. At the time of the execution of the instruments comprising her will, she was fully capable of transacting her own affairs and of determining and making a reasonable disposition of her property. She had four sons, namely: Benson, Francis C., Eugene and J. Gailliard, and one daughter, Anna F. B. Martin, all of whom were living at the time of the death of the testatrix except Benson, who died intestate prior to the death of his mother. Francis C., died subsequent to his mother's death and left a last will and testament whereby his estate was devised and bequeathed to his sister, Anna F. B. Martin Eslick and Mrs. Helen Pugh Lewis. All of the sons were self-supporting with the exception of Eugene, who appeared unable to obtain

employment, and he lived with and was wholly dependent upon his mother. The daughter, Anna F. B. Martin, lived with her mother in Pass Christian, Mississippi, until her mariage to Major Frederick Murphy Eslick in about the year 1926, at which time she was 35 years of age. After their marriage, Major and Mrs. Eslick moved to Savannah, Georgia, where they resided for awhile, and later returned to Pass Christian, to make their home with the testatrix. Major and Mrs. Eslick had one son, Frederick Martin Eslick. Major Eslick was a retired Marine officer who received a pension of about $243.00 per month. He is still living.

Eugene Martin accompanied his mother each summer to Hendersonville, North Carolina, and on the occasion of one of these visits he met Mrs. Mabel W. Quisenberry, a widow, whom he later married on November 14, 1942. He was then 65 years of age. He died on October 4, 1946. His sole heir and the sole beneficiary of his will is his widow, Mrs. Mabel W. Martin, who is one of the appellants here. His widow later married a man named Campbell.

 Benson Martin, who died intestate prior to the death of the testatrix, left surviving him as his sole heirs at law his son Benson, Jr., and his daughter, Mary Frances Martin Dent, who are also appellants here, and under Section 660 of the Mississippi Code of 1942, succeed to the share of their father in the estate of the testatrix. At the time of the death of the testatrix she was living in her home at Pass Christian, Mississippi. At that time she owned a plantation in Warren County, Mississippi, known as Redwood No. 2, and an undivided 1/6 interest in a plantation in Adams County, Mississippi, known as Berkely Plantation and located within the area of the LaGrange Oil and Gas Field, a two-story, nine room residence at Pass Christian, two small Negro tenant houses in New Orleans, Louisiana, and some personal property of small value. Her entire estate, both real and

personal, was estimated to be of the total value of $60,000.

In construing the will of the testatrix, the chancellor held that the instrument dated June 8, 1936 providing that neither Anna nor her son, Frederick Martin Eslick, could inherit until five years after the death of Major Frederick Eslick, was contradictory to the remainder of the instruments admitted to probate and was, therefore, null and of no effect, and that the remaining instruments constituted the last will and testament of the testatrix. The chancellor further held that under the remaining instruments the devise to Eugene Martin of a one-fourth interest in Redwood Plantation in the instrument dated March 24, 1933, was later effectively restricted by the instrument dated May 4, 1942, and was thereby reduced to a life estate with remainder to the heirs of the testatrix as of the date of her death. The chancellor further held that the devise to Mrs. Eslick of a one-fourth interest in Redwood Plantation and a one-sixth interest in Berkely Plantation was a devise to the testamentary trustees for the use and benefit of Mrs. Eslick for the term of her natural life, and upon her death, to said trustees for the use and benefit of Frederick Martin Eslick for the term of his natural life, with remainder in the heirs at law of the testatrix in the event the said Frederick Martin Eslick should survive his mother and die without children, or with remainder in the heirs at law of the said Frederick Martin Eslick in the event he should survive his mother and die leaving issue. The chancellor further held that Mrs. Eslick acquired under the will a fee simple title to the residence property in Pass Christian, and to the New Orleans property, and to the personal property of the decedent.

The chancellor further held that during the existence of the trust created by the will the beneficiary of the trust should be paid the income from the trust property, including all oil and gas rents and royalties collected, less

reasonable expenses incurred in the management by the trustee.

The appellant, J. Gailliard Martin, individually and in his representative capacity, contends that the court erred in holding that any part of the property of the testatrix vested in fee simple in Mrs. Eslick. We think this contention is sound except as to the personal property and the Louisiana property.

It is of course a well settled rule that in construing a will the prime inquiry is the intention of the testator. Cross v. O'Cavanagh, 198 Miss. 137, 21 So. 2d 473; Broomfield v. Englesing, 202 Miss. 62, 30 So. 2d 514; In Re Raworth's Estate, 211 Miss. 780, 52 So. 2d 661; In the Matter of the Will of Kelly Vail, 87 So. 2d 68.

In the instrument dated March 24, 1933, it was provided that the trustees therein named were to hold and manage the *interest* (emphasis ours) of Mrs. Eslick, and in the event of her death to continue as trustee for her son. We think it is manifest that the testatrix intended that the *interest* (emphasis ours) here referred to meant the entire interest provided for Mrs. Eslick under the instrument as a whole, unless a contrary intention should appear from the instrument itself. The only contrary intention appearing in the instrument is that with reference to the personal property. The testatrix provided that Mrs. Eslick was to have the personal property, ''giving her brothers as she sees fit.'' It is readily apparent that the testatrix meant by this language that Mrs. Eslick should have the personal property, and that she might dispose of it to her brothers or keep it as she determined. We are of the opinion, therefore, that the testatrix vested the full title to the personal property in Mrs. Eslick. Nothing of a contrary intention appears in the instrument dated March 24, 1933, or in any of the other instruments. The chancellor so held, and we think he was correct.

██ ██ We are of the opinion, however, that the chancellor was in error in holding that the home in Pass Christian was devised to Mrs. Eslick in fee simple. That property was a part of the *interest* (emphasis ours) devised to Mrs. Eslick by the instrument dated March 24, 1933, and was included in the trust estate and nothing of a contrary intention appears in any of the instruments.

██ ██ The instrument dated March 24, 1933, did not deal with the Louisiana property but dealt only with the personal property of the testatrix and the real estate of the testatrix in Mississippi. By a separate and subsequent instrument dated October 27, 1936, the testatrix devised the Louisiana property to Mrs. Eslick in fee simple and nothing in this instrument is repugnant to any of the other instruments. Since there is no language in this instrument indicating an intention to the contrary, the disposition of the Louisiana property by the testatrix in this document is controlled by the Laws of the State of Mississippi. See Palmer, et al v. Crews, 203 Miss. 806, 35 So. 2d 430, wherein the Court held that a will is to be construed according to the laws of the domicile of the testator as to the disposition of property in another state unless it is clear from the instrument itself that he intended the laws of the other state to control. ██ ██ We conclude that Mrs. Eslick acquired the fee simple title to the Louisiana property. The chancellor so held and we think he was correct.

██ ██ The appellant, J. Gailliard Martin ,further contends that the chancellor erred in holding that the beneficiary of the trust is entitled to receive oil royalties derived from the trust property. The immediatae question presented is as to the right of Mrs. Eslick during her life to be paid the royalties derived from the oil lease on Berkely Plantation. The chancellor decreed that during the existence of the trust the beneficiary, who at present is Mrs. Eslick for the term of her life, should be paid these royalties. We think the chancellor was in

error in so holding. It is clear from the record that the oil lease from which the royalties are being derived was executed subsequent to the death of the testatrix. █ We held in Palmer, et al v. Crews, supra, that an oil royalty is an interest in real estate entitling the owner to share in the production of oil, gas or other minerals therefrom. We also held in Dougherty v. Greene, et al, 218 Miss. 250, 67 So. 2d 297, that the interest conveyed by a mineral lease is a determinable fee and that the royalties payable under such lease is an interest in the land itself. It is manifest to us that the oil in place is a part of the real estate and can not be withdrawn without injury to the inheritance, and that, therefore, portions of the oil produced and paid as royalties represent principal or corpus and only the interest thereon derived from any investment of such funds should be paid to the life tenant. Analagous to the question is the right of the tenant to cut for profit and remove timber on the leased premises. In the case of Bernard v. Board of Supervisors of Jackson County, 216 Miss. 387, 67 So. 2d 576, the Court held that the cutting of timber by the tenant for commercial purposes constituted waste and an injury to the inheritance, and that no right vested in the tenant to do so or to receive the proceeds of the timber so cut. We think the question, however, has been disposed of adversely to the life tenant by this Court in the case of Pace v. State ex rel Rice, 191 Miss. 780, 4 So. 2d 270, wherein it was held that a life tenant has no interest in or right to open and work new mines not in operation at the time the life estate vests, since to do so would amount to the commission of waste as a lasting injury to the inheritance. See also 31 C. J. S., Estates, Section 42, p. 49. It is our opinion that the chancellor was in error in holding that the life tenant under the trust is entitled to be paid the royalties of the oil lease on the interest in Berkely Plantation. The beneficiary of the trust vested with a life estate is entitled

only to the interest derived from any investment of funds paid as oil royalties.

The appellant, Mrs. Mabel W. Martin (Campbell) contends that Mrs. Anna F. C. Martin died intestate and that as the sole heir at law of her husband, Eugene Martin, who died subsequent to the death of his mother, she is entitled to succeed to her deceased husband's share in the estate of his mother, such share to be determined according to the laws of descent and distribution. She further contends that if mistaken in the foregoing contention, then in any event she is vested with the one-fourth interest in Redwood Plantation devised to her husband, Eugene Martin, for the reason that the restriction as to alienation placed on her husband by the instrument dated May 4, 1942 was repugnant to the estate originally created for her husband, and was against public policy and void, and that, therefore, her husband was at the time of his death vested with a fee simple title to said one-fourth interest in Redwood Plantation.

In addressing ourselves to the said appellant's first contention, it is to be borne in mind that it is a well established rule that a will is to be construed so as to avoid intestacy if that can be reasonably done considering the language employed in the instrument and the circumstances confronting the testator at the time. Palmer, et al v. Crews, supra.

The appellant bases her contention upon her interpretation of the instrument dated June 8, 1939, and the instrument dated May 4, 1942. She concedes that the instrument dated June 8, 1939 was properly admitted to probate since it named and nominated executors, notwithstanding the fact that it made no disposition of property. Crawford's Estate v. Crawford, 82 So. 2d 823. She argues, however, that the instrument dated June 8, 1939 was an entire new will and that it revoked all prior wills and codicils and that since it made no disposition of property, the testatrix should be ad-

judged to have died intestate and this appellant should be adjudged to have succeeded to the share of her deceased husband as an heir at law of his mother's estate. We are of the opinion that this argument is not well founded. We think that the statement of the testatrix contained in the said instrument of June 8, 1939 to the effect that she had theretofore given to her executors elsewhere the details of the division of her property in Louisiana and Mississippi had reference to the details contained in the prior instruments of a testamentary nature and clearly indicates that she was not revoking the original instrument dated March 24, 1933 providing for the disposition of her property in Mississippi, or the instrument dated October 27, 1936 devising to her daughter, Mrs. Eslick, the Louisiana property. More convincing of this conclusion is the statement of the testatrix in the instrument dated May 4, 1942 wherein she used the language: "In leaving to my son Eugene 1/4 one-fourth of my estate in Redwood Plantation...." Nowhere in any of the other instruments had she left to her son Eugene a one-fourth interest in Redwood except in the instrument dated March 24, 1933. We have no difficulty in concluding that the said instrument dated June 8, 1939 did not and was not intended by the testatrix to wholly revoke and annul all prior testamentary dispositions of her property made in prior instruments, and that, therefore, she did not die intestate. We are of the opinion and hold, however, that said instrument of June 8, 1939 by implication revoked or modified the provision in the prior instrument of March 24, 1933 with reference to the vesting of the remainder interest upon the death of Frederick Martin Eslick. ██ ██ In the instrument dated March 24, 1933, it was provided that the trustees hold and manage the interest of Mrs. Eslick, and in the event of her death continue as trustees for Mrs. Eslick's son, Frederick, and that in the event Frederick should survive his mother and die *without children* (emphasis

ours) then the interest was to go to the direct heirs of the testatrix. This condition with reference to Frederick's death *without children* was eliminated in the subsequent instrument dated June 8, 1939, wherein it was provided that upon the death of Frederick the remainder interest should vest in the direct heirs of the testatrix. Thus it is apparent that the testatrix intended as to the provision made for Frederick that upon the death of Frederick, the remainder interest should vest in the direct heirs of the testatrix, whether Frederick died with or without children. The chancellor held that such condition attached to the vesting of the remainder interest, and as to this, we think he was in error.

██ ██ We are further of the opinion and hold that by implication, the instruments of October 27, 1936, and June 8, 1939, revoked the instrument of June 8, 1936 providing that Mrs. Eslick and her son should not inherit any of her property until five years after the death of Major Eslick. In the instrument dated October 27, 1936, the testatrix devised her Louisiana property without provision for the postponement of the enjoyment thereof. In the instrument dated June 8, 1939, the testatrix directed the management by trustees of the interest of Mrs. Eslick and her son, without any provision for the postponement of the enjoyment thereof. Regardless of what may have actuated the testatrix at the time to make the provisions contained in the instrument of June 8, 1936, we are of the opinion that the testatrix intended to revoke, and did revoke, such provisions by the two subsequent instruments above referred to.

We come now to the contention of Mrs. Mabel W. Martin (Campbell) that in any event she is vested with the one-fourth interest in Redwood Plantation devised to her husband, Eugene Martin. This contention presents for our determination and decision the validity vel non and effect of the restraint as to alienation placed upon Eugene Martin by the provisions of the instrument dated

May 4, 1942. We repeat here for immediate consideration the language of this instrument.

"In leaving to my son Eugene Martin 1/4 one fourth of my estate in Redwood Plantation. It is to be understood he, does not convey it, any manner, away from my blood—that is to no one out or away to any one—unless to one of his brother Gaillard or Francis Martin or his sister Anna F. M. Eslick or her son Frederick Martin Eslick.

"I feel I have this legal right—having in many ways given him and expended on him, many and other benefits."

The chancellor held that the devise to Eugene Martin of a one-fourth interest in Redwood Plantation in the instrument dated March 24, 1933, was later effectively restricted by the instrument dated May 4, 1942, and was thereby reduced to a life estate with remainder to the heirs of the testatrix as of the date of her death. We are unable to agree with the chancellor's conclusion. The appellant argues that the attempted restrictions upon alienation are repugnant to the original estate created and are insufficient to reduce such estate to a life estate, and that, therefore, the fee simple title to a one-fourth interest in Redwood was vested in Eugene Martin at the time of his death, and that the same passed to his sole heir, Mrs. Mabel W. Martin (Campbell). We think this argument is sound.

 It will be observed that the instrument in question makes no provision for the reversion of the title in the event Eugene Martin in his lifetime violates the restrictions or makes no conveyance whatever of the property. There are also well recognized rules of construction to be borne in mind in solving the question presented. Courts in construing wills do not favor the creation of life tenancies. In Re Raworth's Estate, 211 Miss. 780, 52 So. 2d 661. The law favors the vesting of estates created by will at the earliest possible mo-

ment. In Re Raworth's Estate, supra. ██ ██ An absolute devise may not be reduced to a life estate by any succeeding language which is inferior in clarity or certainty in the devising estate. In Re Vail's Will, 87 So. 2d 68.

In the cases of Crawford, et al v. Solomon, 131 Miss. 792, 95 So. 686, and Bratton v. Graham, 146 Miss. 246, 111 So. 353, this Court has recognized the validity of partial restraints on alienations. Those cases, however, dealt with instruments containing reversionary clauses. The opinion in the case of Fowlkes v. Wagoner (Tenn.), 46 So. 590, quotes Professor Freeman's note to De-Peyster v. Michael, 57 Am. Dec. at page 496, as follows: "It may be laid down as a general rule that unless there is a reversion or limitation over to secure obedience to a prohibition to alienation, it is wholly nugatory."

Aside from the general rule quoted, however, we do not think that the language of the restraining clause restricting Eugene Martin from conveying the property to anyone other than to one of the testatrix's own "blood" is of sufficient clarity and certainty to reduce the orginal devise to a life estate. It is clear that the original estate created by the will in Eugene Martin was a fee to a one-fourth interest in Redwood Plantation. Manifestly the testatrix recognized in her son, Eugene, qualities of improvidence and made the provision against alienation to anyone other than one of her own blood in order to safeguard the property against such improvidence. There is nothing in the language used, however, to indicate an intention on her part to reduce the original estate granted to him. This is made more apparent by her failure to provide a reversion or limitation over. Eugene made no conveyance in his lifetime to anyone, and the original estate created for him remained unaffected. In the case of Disman v. Flippin's Adm. (Ky.), 116 S. W. 740, the Court dealt with a devise of land to the testator's daughter wherein he devised the land to

"her and her heirs forever without the right to her or her husband ever to sell or transfer the same, yet should she leave heirs they may sell and dispose of it as other lands." The Court held that the granting words gave an absolute estate which was not cut down by the subsequent words, and hence the daughter took a fee simple estate whether the attempted restraint on the power of alienation was valid or not.

In the case of Hacker v. Hacker, 153 App. Div. Rep., Supreme Court New York, 153, the testator devised and bequeathed his estate to Joseph Carl Hacker, providing "that the said estate shall not be given or sold only in the name of the Hacker family and must remain the Hacker estate forever." The Court held that the restraint on alienation was ineffectual to limit the quality of the estate given. The Court said: "When an estate is given in one part of a will in clear and decisive terms, it cannot be taken away or cut down by any subsequent words that are not as clear and decisive as the words creating the estate."

■■ ■ We have likewise held in the case of In Re Vail's Will, supra, that an absolute devise may not be reduced to a life estate by any succeeding language which is inferior in clarity and certainty to the devising clause. The testatrix devised to her son Eugene in fee a one-fourth interest in Redwood Plantation by the instrument dated March 24, 1933. She reaffirmed this devise in the instrument dated May 4, 1942. We do not think that the language subsequently used by the testatrix and attempting to partially restrain alienation is of sufficient clarity and certainty to take away or cut down the original estate created.

■■■ We are accordingly of the opinion that Eugene Martin was vested at the time of his death with the fee simple title to a one-fourth interest in Redwood Plantation and that his wife succeeded to that interest upon his death.

. ■■■ The appellant, J. Gailliard Martin, in his capacity as testamentary trustee, seeks by his petition a construction and interpretation of the decedent's will to determine his rights, powers and authority with respect to repairs and improvements to the trust property and the sale of such propery. The trust estate created by the will is a life estate for the benefit of Mrs. Eslick during her life and upon her death for the benefit of Frederick Martin Eslick during his life. There is no provision in the will expressly vesting in the trustees authority to make repairs or improvements or to sell the property of the trust estate. The general rule is that the life tenant is obligated to make ordinary repairs necessary to preserve the property, and is also obligated to pay the taxes on the property. 31 C. J. S., Estates, Sec. 44, p. 55; Magee v. Holmes, 220 Miss. 49, 70 So. 2d 60; McDonald v. Arnold, 222 Miss. 80, 75 So. 2d 276. ■■ ■ We, therefore, hold that the trustee is authorized to make ordinary repairs to the trust property and to pay therefor, and to pay the taxes, from the rents, revenues and income derived from the property. We pretermit any decision with reference to the authority of the trustee to sell the trust property and with reference to the approval of expenditures of the corpus made or to be made for permanent improvements, until such time as the question may properly come before us to review a decision of the court rendered in the exercise of its equity jurisdiction authorizing or declining to authorize expenditures for permanent improvements or a sale of trust property under the particular facts presented.

The decree of the court below is accordingly modified to conform to this opinion and is affirmed as so modified.

The costs of this appeal are assessed in the proportion of one-half thereof to the appellants and one-half thereof to the appellee.

Affirmed as modified.

*Roberds, P. J.,* and *Hall, Lee* and *Kyle,* JJ., concur.

ON MOTION TO CORRECT JUDGMENT

HOLMES, J.

The opinion in this case was handed down on November 12, 1956, and judgment was entered in the cause as of the same date. One of the appellants, Mrs. Mabel W. Martin, now moves the Court to correct the judgment and eliminate therefrom the following:

"It is further ordered, adjudged and decreed that all mineral leases including leases for oil and gas executed by the Trustees J. Gailliard Martin and Francis C. Martin, or either of them, covering or embracing the aforesaid lands in Adams County and elsewhere be and the same are hereby adjudicated to be valid leases and to be in full force and effect from the date thereof."

It is the contention of the movant that the question of the validity of oil and gas leases executed by the testamentary trustees was not presented to or passed upon by the Court, and that it was error to incorporate in the judgment an adjudication of such question. We think the contention of the movant is well taken.

The Court's decision involved a construction of the will of the decedent and the determination of the question as to the right of Mrs. Eslick during her life time to be paid the royalties derived from an oil lease executed subsequent to the death of the testatrix. Except to the extent that such decision might affect the validity of any oil and gas lease executed by the testamentary trustees, the question of the validity of oil and gas leases was not passed upon or decided by the Court. It was erroneous, therefore, to incorporate in the judgment a general adjudication of the validity of oil and gas leases. The motion of the appellant, Mrs. Mabel W. Martin, to correct the judgment by striking and eliminating therefrom such adjudication is sustained. Shipman v. Lovelace, et al, 215 Miss. 141, 60 So. 2d 559.

Motion to correct judgment sustained.

*Roberds, P. J.,* and *Hall, Lee,* and *Kyle,* JJ., concur.