Mabel W. MARTIN, Annie M. Kelly, Sue Kelly Mee, W. J. Vollor, Landman Teller, James P. Biedenharn, L. C. Gwin and R. D. Kuehnle, Plaintiffs,

v.

HUMBLE OIL AND REFINING COMPANY, a Corporation, Defendant.

Civ. A. No. 806.

United States District Court
S. D. Mississippi, W. D.

June 6, 1960.

Teller, Biedenharn & Rogers, Vicksburg, Miss., Gwin & Kuehnle, Natchez, Miss., for plaintiffs.

M. M. Roberts, Hattiesburg, Miss., for defendant.

MIZE, Chief Judge.

This is an action by Mrs. Mabel W. Martin, a vested remainderman, along with the other plaintiffs, against the Defendant for damages to the inheritance and waste committed thereto. The background of this litigation is fully disclosed in the decision of the Supreme Court of Mississippi in the case of Martin et al. v. Eslick et al., reported in 229 Miss. 234, 90 So.2d 635 and 92 So.2d 244. The litigation grows out of the construction of the will of Mrs. Anna F. C. Martin, which will was construed by the Supreme Court of Mississippi in the citations hereinabove referred to.

During her lifetime Anna F. C. Martin owned a ⅙ interest in Berkely Plantation in Adams County, Mississippi and it is out of this interest that the claims of the various parties here arise. Anna F. C. Martin, along with her co-owners in Berkely Plantation, on July 1, 1940 executed an oil and gas lease to John F. Perryman covering all of the Berkely Plantation. The Defendant in this case, Humble Oil & Refining Company, became the owner of that lease by assignment. The primary term of the lease was five years and during that time no oil, gas or other

mineral was produced. Anna F. C. Martin died testate on December 3, 1942, owning at the time of her death the aforesaid ⅙ interest. She left a will which created a testamentary trust devising her ⅙ interest in Berkely Plantation to J. Gaillard Martin and Frances C. Martin as Trustees for the use of Anna F. B. Martin Eslick for the term of her natural life and at her death, for the use and benefit of Frederick Martin Eslick for the term of his natural life, and upon the death of the survivor of this life tenancy the trust should terminate and the corpus delivered to the heirs of Anna F. C. Martin, Testatrix.

At the time of the death of Anna F. C. Martin her son, Eugene Martin, was living and was one of the heirs of Anna F. C. Martin, along with the other children of Anna F. C. Martin. He died after his mother, leaving at the time of his death the plaintiff in this case, Mrs. Mabel W. Martin, as his widow and sole devisee under his will. They had no children. Mrs. Mabel W. Martin is one of the remaindermen under the will of Mrs. Anna F. C. Martin and, before the filing of this lawsuit, she had conveyed an interest out of her interest to the other plaintiffs in this lawsuit. Mrs. Anna F. C. Martin had five children, each one of whom are her heirs and devisees and as such would inherit a ⅕ interest of the ⅙ interest in Berkely Plantation as remaindermen.

The Trustees, under the will, and the life tenants under the will, executed an oil and gas lease to the Defendants in this case on April 12, 1945 and this lease was for a primary term of five years, and covered, or undertook to cover, all of Berkely Plantation, and contained a general warranty of title. All of the remaindermen other than the Plaintiff herein executed separate leases for primary terms of five years, describing all the whole of Berkely, with the general warranty of title, and dated the same day as the one executed by the Trustees under the life tenants on April 21, 1945. Frederick Martin Eslick, a life tenant, executed one on November 4, 1946 ratifying the lease executed by the Trustee and by

his mother and father, and also in October, 1946 J. Gaillard Martin, individually and as the sole surviving Trustee ratified the lease executed by the Trustees and by Anna F. B. Martin Eslick and her husband, dated April 12, 1945. The Plaintiff herein, Mrs. Mabel W. Martin, refused and declined to execute any type of lease and specifically refused to execute the lease known as the ratification lease, contending all the way through that she had a vested interest in the remainder and that she was unwilling to execute a lease or join in the ratification of any lease. She at no time executed a lease or ratified a lease, nor did her husband, Eugene Martin, in his lifetime, execute any lease or join in the ratification of any lease.

The Humble Oil and Refining Company owns an undivided 5⁄6ths leasehold interest in and to all oil, gas and other minerals in and under the Berkely Plantation property involved in this litigation by virtue of leases granted to it by others than those claiming under the Last Will and Testament of Mrs. Anna F. C. Martin, deceased.

The Humble Oil and Refining Company acquired a valid and subsisting oil, gas and mineral lease to an undivided 5⁄6ths of the Berkely Plantation through leases granted it by persons other than those claiming under the Last Will and Testament of Mrs. Anna F. C. Martin, and there is here involved only an undivided 1⁄30th interest in the oil, gas and other minerals in and under said Berkely Plantation, which 1⁄30th is claimed by Mrs. Mabel W. Martin.

The first oil and gas well was drilled on the property in 1950 and was successful. Several other oil wells, since that time, have been brought into production and there have been some failures. The question for determination here is whether or not the Plaintiff, Mrs. Mabel W. Martin, as a co-tenant, is entitled to bring suit and recover a monetary judgment for damage to the inheritance and waste.

Many questions are raised by the litigants. There is no dispute about the jurisdiction of the Court, unless indispensable parties were omitted which, if required to be brought in, would have destroyed the jurisdiction. This matter was raised first by motion to dismiss and again at the conclusion of the trial and is argued by the Defendant at length at the present time. On March 21, 1959 in a letter opinion to the parties the Court was of the opinion that certain other parties were indispensable—that is to say, the other co-tenants in the remainder of the estate. There are other heirs, several of them, not necessary to name, who are citizens of the State of Mississippi, and if they are indispensable parties, the jurisdiction would be destroyed. In this letter opinion of March 21, 1959 I reached the conclusion that they were indispensable parties, but the question was re-argued and by letter opinion dated May 21, 1959 the Court reached the conclusion it was in error in its opinion of March 21, 1959, concluded and so held that these parties were not indispensable to the rights of the Plaintiffs as sought in the present litigation.

The suit is brought by the remaindermen against the Defendant, alleging waste to the remainder created in the property. The Plaintiffs at no time ever consented to the commission of waste and under the law of Mississippi a co-tenant has the right to sue for damages to the inheritance insofar as his individual, undivided interest is concerned. See the case of Moss Point Lumber Co. v. Board of Supervisors of Harrison County, 89 Miss. 448, 42 So. 290; Sparkman v. Hardy, 223 Miss. 452, 78 So.2d 584. It is settled in Mississippi that a party dealing with a life tenant is charged with notice of the extent of the life tenancy and of the right of the tenant to deal with the property, and if the life tenant exceeds his authority, the one purchasing from him is not relieved from the obligation to respond in damages to the remaindermen for waste, and the co-tenant is entitled to proceed against the one committing waste without joining the other tenants. Calcote v. Wise, 219 Miss. 270, 68 So.2d 477. I have considered again the question of ju-

risdiction and am of the opinion that the co-tenants are not indispensable parties and that, therefore, the Court does have jurisdiction.

■ The Defendant contends that the lease executed by the life tenants and the Trustees covering the entire property is a valid lease and that the ratification leases executed by the co-tenants of the Plaintiffs herein were valid leases, and that the Plaintiffs have no vested rights in anything at this time; and further contends that the litigations in the State courts of Mississippi are res adjudicata, further contending that the Plaintiffs are estopped to assert the cause of action as alleged in the complaint. The law of Mississippi will control the rights of the litigants herein, as the property is located in Mississippi. The Plaintiff, Mrs. Mabel W. Martin, is a citizen of Florida, and after the death of her husband she returned to Mississippi only a few times, and under the evidence in this case there is nothing to base estoppel on.

■ The interest of the Plaintiff as a remainderman became vested immediately upon the death of the Testatrix and the Plaintiff is not a remote or ultimate remainderman. She has a vested interest now and had immediately upon the death of her husband, who had a vested interest immediately upon the death of his mother, the Testatrix. A very recent case in the Supreme Court of Mississippi with reference to when the interest vests in remaindermen is that of McClelland et al. v. Bank of Clarksdale, 238 Miss. 557, 119 So.2d 262. The Trustees under the will for the benefit of the life tenants and the life tenants individually had no right to execute a gas and oil lease or otherwise sell or dispose of the gas and oil under the law in Mississippi. An oil, gas and mineral lease under the law of Mississippi is a sale and conveyance of an interest in real property and when one purchases from a life tenant or Trustees for the life tenants, he is charged with knowledge of the power of such persons. Under the will in the present case, as construed by the Supreme Court of Mississippi, no power of sale was given to the Trustees and when they undertook to execute the gas and oil lease they exceeded their powers. See the case of Stokely v. State ex rel. Knox et al., 149 Miss. 435, 115 So. 563, wherein the Supreme Court of Mississippi held that the Trustees of the State Insane Hospital were without power to execute an oil and gas lease for the exploration of minerals. Likewise, it was held in the case of Martin v. Eslick, supra, that an oil royalty is an interest in real estate entitling the owner to share in the production of the oil, gas and other minerals therefrom, and that the lease is a conveyance of an interest in the land itself, holding further that portions of the oil produced and paid as royalties represent principal or corpus, and only the interest therefrom, derived from the investment of such funds, should be paid to the life tenant. See also Learned v. Ogden, 80 Miss. 769, 32 So. 278. Since the lease executed by the Trustees for the use and benefit of the life tenants and by the life tenants themselves was beyond the power of those parties to execute, insofar as the Plaintiff herein was concerned, it follows that the only leases under which the Defendant went into possession and drilled the wells were the ratification leases executed by the other co-tenants, which to the extent of $2\%_0$ also ratified and validated the lease that was executed by the Trustees and life tenants, but such leases could not affect the property owned by the Plaintiff.

■ There is no dispute in the testimony that no wells or minerals of any type had ever been opened up during the lifetime of Mrs. Anna F. C. Martin and, therefore, there were no wells or income from leases or minerals of any type for the Trustees to manage or control. Minerals, as hereinbefore stated, were a part of the corpus of the estate. No rights are given to the Defendant by virtue of the lease that was executed by the Testatrix in 1940 for the primary term of five

years, since there were no minerals in production during her lifetime. See the case of Dougherty v. Greene, 218 Miss. 250, 67 So.2d 297. It is contended by the Defendant that the Supreme Court of Mississippi, in the case of Martin v. Eslick, supra, adjudicated that the Trustees owned the oil, gas and other minerals and had the right to execute the lease on behalf of the life tenants. They quote that part of the opinion wherein the Court said:

"* * * the one-sixth interest in Berkely, devised in trust as aforesaid, and the home property in Pass Christian, is to be held, owned and managed by the Trustees named and their successors in office for the use and benefit of Anna F. B. Martin Eslick for the term of her natural life and at her death for the use and benefit of Frederick Martin Eslick for the term of his natural life, and upon the death of the survivor of said beneficiaries the trust is to terminate and the then corpus is to be delivered to the heirs of Anna F. C. Martin."

This argument is without merit. The Court used the word "owned" in the sense that it was owned under the terms of the will and within the limits of the will during the lifetime of the life tenants. Certainly it was never intended by the Supreme Court of Mississippi to hold that the Trustees owned in fee simple this property, but the only conclusion is that the Court was using the word "owned" in the sense that the Trustees were entitled to the possession and management during the lifetime of these life tenants, subject to the rights of the remaindermen. A reading of the entire judgment and the two opinions will demonstrate clearly that the Supreme Court had in mind only the ownership for the purpose of managing the property for the benefit of the life tenants and subject to the laws of life tenancy in Mississippi.

Trustees under a will have no power to sell the corpus of the estate unless it is specifically given by the terms of the will and nowhere in the will or in either of the decisions of the Supreme Court were the Trustees given the authority to sell or dispose of the corpus of the estate. The Supreme Court of Mississippi specifically held that the trust estate created by this will was a life estate for the benefit of the life tenants and upon the death of the last one, that the trust would be terminated, and the Court further found that there was no provision in the will specially vesting in the Trustees authority to make repairs or improvements or to sell the property of the trust estate.

Under the leases of the co-tenants of the Plaintiff there can be no question but what the Humble Oil and Refining Company had the right to go into the land and explore, drill, produce and take the oil and gas therefrom. It, in effect, became a co-tenant of the Plaintiff herein, but when one co-tenant develops oil and gas, he is under the duty to account to the others who do not join with him for their pro rata share of the minerals taken from the soil, after deducting the cost of production. There was certainly no active bad faith on the part of the Defendant, nor was the Defendant guilty of any trespass, but it must account to the Plaintiff for the value of the minerals taken, less the cost of production.

The measure of damages was reserved by consent of the parties for determination after a full hearing upon the rights of the parties and it having now been determined that the Plaintiff is entitled to recover a monetary judgment, the Court will reserve jurisdiction for a determination of the damages to which Plaintiff may be entitled.

An order may be drawn in accord herewith.