Henry G. MILLS, et al., Plaintiffs/Counter Defendants–Appellants,

v.

DAMSON OIL CORP., Defendant/Counter Plaintiff–Appellee.

No. 90–1418.

United States Court of Appeals, Fifth Circuit.

May 21, 1991.

Stanford Young, Waynesboro, Miss., Weyman W. McCranie, Jr., Robert P. Denniston, Alton R. Brown, Jr., Brown, Hudgens, Richardson, P.C., Mobile, Ala., for plaintiffs-counter defendants-appellants.

John E. Wade, Jr., E.L. Brunini, Jr., Brunini, Grantham, Grower & Hewes, Jackson, Miss., for defendant-counter plaintiff-appellee.

Before RUBIN, POLITZ, and DUHÉ, Circuit Judges.

POLITZ, Circuit Judge:

We hear, for the third time,[1] an appeal involving a 1/16 mineral interest in two oil wells in Mississippi.[2] We affirm the summary judgment granted Damson Oil Corporation on plaintiffs' fraud and conversion claims, and its bench trial judgment for recovery of certain erroneously-made payments.

### Background

In 1976 the Mississippi State Oil and Gas Board granted Damson a permit to drill an oil well denominated Sabine No. 2 in Wayne County, Mississippi. A simultaneously submitted request for Sabine No. 3 was approved in February 1977 when the Board force integrated the well. Integration, referred to as pooling or unitization in other jurisdictions, was required because Damson did not own all of the necessary mineral rights.

Sabine No. 2 reached payout in December 1978; Sabine No. 3 did likewise by October 1981. In the meantime a dispute had arisen as to the ownership of a 1/16 interest in each well. The facts underlying

---

1. *Cf. Claussen v. Aetna Casualty & Sur. Co.,* 754 F.Supp. 1576, 1577 (S.D.Ga.1990) (Edenfield, C.J.) ("As Yogi Berra once said, 'it's like deja vu all over again.'").

2. *See Mills v. Damson Oil Corp.,* 686 F.2d 1096 (5th Cir.1982), *certified questions answered,* 437 So.2d 1005 (Miss.), *answers conformed to,* 720 F.2d 874 (5th Cir.1983).

that controversy are detailed in *Mills I;* the final result of that litigation was to confirm in the appellants now at bar ownership of the disputed mineral interests. After each Owner had executed a division order authorizing Damson to market the production, Damson began making royalty payments and also began separately billing the Owners for a proportionate share of drilling expenses.

In 1986 the Owners brought suit in Mississippi state court alleging improprieties in the integration procedures and in the operation of Sabine Nos. 2 and 3. The complaint sought $10,000,000 in actual damages and a like sum in exemplary damages. Damson removed the cause to the Southern District of Mississippi and counterclaimed against Stanford Young[3] for a claimed erroneous royalty overpayment. Damson then moved for summary judgment on both the principal demand and counterclaim.

The summary judgment record contains affidavits filed by both sides regarding the manner in which the wells were operated and the proceeds divided. The Owners claimed improper commingling, shoddy measurement practices, and improper accounting procedures. Damson detailed its integration procedure and operational and record-keeping methodology.

Following multiple discovery deadline extensions and discovery disputes requiring resolution by the court, summary judgment was rendered in favor of Damson on all but the accounting dispute. A bench trial was held and a judgment was rendered in favor of Damson and against Young for $11,-433.12. The Owners timely appealed.

### Analysis

On appeal the Owners challenge entry of the adverse summary judgment, maintaining that the trial court overlooked a genuine issue of material fact which obviated the use of the summary judgment procedure. Our standard of review in such matters is well settled. Where the record, including affidavits, interrogatories, admis-

sions, and depositions could not, as a whole, lead a rational trier-of-fact to find for the nonmoving party, there is no genuine issue for trial. Fed.R.Civ.P. 56(c); *Washington v. Armstrong World Indus., Inc.,* 839 F.2d 1121 (5th Cir.1988). We apply the same standard as the trial court, viewing the facts in the light most favorable to the nonmoving party. *Southmark Properties v. Charles House Corp.,* 742 F.2d 862 (5th Cir.1984); *Nunez v. Superior Oil Co.,* 572 F.2d 1119 (5th Cir.1978).

■ The trial court correctly found the Owners' affidavits insufficient to raise a genuine, material factual issue.

> Plaintiffs' charge of fraudulent misrepresentation by Damson as to the amount of oil, gas and water produced from the two wells cannot stand. It is well settled under Mississippi law that a cause of action for fraud requires proof of, *inter alia,* an intent to deceive. Such proof is "indispensable." *Franklin v. Lovitt Equipment Co., Inc.,* 420 So.2d 1370, 1373 (Miss.1982). Even were the court to assume that Damson has, as plaintiffs allege, failed or refused to install, maintain and keep in good working order production meters and gauges on the two wells, that alone is not proof of and does not give rise to any inference of an intent to deceive the plaintiffs. At most, such conduct, if proven, would constitute negligence. Moreover, in the court's opinion, plaintiffs have failed to sufficiently demonstrate the existence of a factual dispute such as would necessitate a trial on this issue.
>
> ... These affidavits establish only that certain meters were out of calibration or were not always in good working order and were required to be repaired a number of times.

The Owners argue that the district court overstated the predicates necessary for a finding of scienter under Mississippi law given that the longstanding elements of fraud contemplate "the speaker's knowledge of its falsity or *ignorance of its*

---

**3.** Young was the Owners' attorney of record throughout much of the litigation, and remains

of counsel in the instant appeal.

*truth.* " *Whittington v. Whittington,* 535 So.2d 573, 585 (Miss.1988) (emphasis supplied). We disagree. While the trial court may have attributed incorrectly the "indispensable" language regarding proof of intent to deceive, it correctly stated the law. *Anderson Dunham, Inc. v. Aiken,* 241 Miss. 756, 761, 133 So.2d 527, 529 (1961).

In *Anderson Dunham,* the Mississippi Supreme Court held that proof of an intent that the falsity be acted on by the victim, in the manner reasonably contemplated, is indispensable to a fraud action. Such proof must satisfy the clear and convincing standard. *Franklin v. Lovitt Equipment Co.,* 420 So.2d 1370 (Miss.1982). The element the *Anderson Dunham* court refers to is separate from the issue of the speaker's knowledge of the falsity or his ignorance of the truth. Even were the Owners to prove that Damson was ignorant of the correct amounts of oil in question, they offer nothing beyond bare allegations to carry the indispensable burden of showing Damson's intent to deceive regarding the supposed misstatements. Moreover, at oral argument Owners' counsel was unable to point to *any* evidence that the claimed erroneous gauging actually worked to the Owners' disadvantage.

The trial court's holding that the Owners' offerings do not create a genuine material issue of fact is fully supported by the summary judgment record. The Owners' affidavits speak of a relatively short period of time and reflect the statements of persons unskilled in the oil business, or of relief workers whose duties did not include repair and maintenance of the gauges in question. Mindful that "fraud is essentially a question of fact," *Whittington,* 535 So.2d at 585 (citation omitted), we find no genuine factual issue on the fraud claim.

The conversion claim is based on much of the same evidence as the fraud claim, but it also includes vague conclusionary charges that Damson committed "an unauthorized act of dominion ... over plaintiffs' proportionate share of the oil from their land...." In its disposition of this contention the district court discussed Mississippi Code Section 53–3–7, the integration statute, and noted that as section 53–3–7 was adhered to by Damson there is no question that "Damson had and has the right to produce the wells, on condition that it account to the plaintiffs for their proportionate shares of production from the units less development and production expenses." We perceive no error in that finding.

The Owners' principal claims in the trial court related to lack of notice; on appeal they turn their sights toward the maintenance of the measuring equipment. Either way their arguments are unpersuasive. The lack of notice at the time of integration resulted from the absence of a recorded interest in the mineral rights in the name of the Owners. As the trial court noted, notice by publication, which was properly effected, was sufficient with respect to the Owners as of 1977. Once we confirmed their property rights, *Mills II,* the Owners became *de facto* cotenants of Damson. As such, their situation paralleled that in the case relied on by Damson and the district court, *Martin v. Humble Oil and Refining Co.,* 199 F.Supp. 648 (S.D.Miss.1960), *aff'd and remanded on other grounds,* 298 F.2d 163 (5th Cir.1961), *cert. denied,* 371 U.S. 825, 83 S.Ct. 45, 9 L.Ed.2d 64 (1962).

In *Martin* the remainderman of a 1/30 interest in the mineral rights of a plantation brought suit alleging that the trustees of the intervening life estate wrongfully leased oil rights, thereby committing waste. The *Martin* trial court stated:

> [T]here can be no question but what the Humble Oil and Refining Company had the right to go into the land and explore, drill, produce and take the oil and gas therefrom. It, in effect, became a co-tenant of the Plaintiff herein, but when one co-tenant develops oil and gas, he is under the duty to account to the others who do not join with him from their pro rata share of the minerals taken from the soil, after deducting the cost of production. There was certainly no active bad faith on the part of the Defendant, nor was the Defendant guilty of any trespass, but it must account to the Plaintiff for the

value of the minerals taken, less the cost of production.

*Id.* at 653. The record before us presents a similar situation. Damson was lawfully permitted to drill the two wells in question, becoming liable to the Owners only after their claims were adjudicated. While Damson owed the Owners an accounting for the relevant time period, no claim for conversion lies.

■ Finally, the Owners contend that even if their fraud or conversion claims fail, they should have, at the very least, recovery for negligent misrepresentation. Under Mississippi law, negligent misrepresentation presents an actionable claim distinct from fraud. The Mississippi Supreme Court informs:

> The basis for damages resulting from negligent misrepresentation is the lack of care; the basis for damages resulting from fraud is the want of honesty. The lack of care in misrepresentation and the want of honesty in fraudulent misrepresentation in business transactions give rise to distinct causes of action, the one in tort, the other in fraud.

*First Money, Inc. v. Frisby,* 369 So.2d 746, 750 (Miss.1979) (citation omitted).

We concur in the district court's finding that while the Owners allege negligence on Damson's part, no triable issue of fact with respect thereto is presented. The evidence, save for intent to deceive, would be similar for a fraud or a misrepresentation case, and the lack of support for one is a lack of support for the other.[4]

*Motion to Compel Discovery*

■ The Owners maintain on appeal that the trial court's decision not to grant their motion to compel discovery was an abuse of its broad discretion. Much of their argument depends upon Young's affidavit which was submitted in support of the motion to compel. This affidavit relates to Damson's lack of compliance with the interrogatories and deposition requests which the Owners submitted, including a failure to provide substantial amounts of material business records and the production of coded and unexplained computer printouts which were useless to the Owners' counsel.

A second counsel attested, *inter alia*, that an inappropriate clerk appeared as a corporate witness for Damson in violation of Fed.R.Civ.P. 30(b)(6); that Damson witness Charles J. Morganti eluded counsel's attempt to depose him; and that Damson refused to produce many easily-obtainable records during a deposition conducted at Damson's Houston headquarters. The record reflects no attempt to contact the district or magistrate judge when these problems arose. Finally, the Owners point an accusing finger at Damson for its destruction of material evidence which ostensibly, and as the district court held, was done in accordance with its standing records retention policy.

The standards for review of a denial of discovery when the party seeking the discovery does so in order to contest the recitals of material fact in a motion for summary judgment, are not necessarily identical to those applicable to a ruling involving discovery for other purposes.

In *Paul Kadair, Inc. v. Sony Corp.,* 694 F.2d 1017 (5th Cir.1983), we considered the district court's denial of a motion for a continuance to proceed with discovery under Rule 56(f). After examining precedent in both the courts of appeals and the Supreme Court, we concluded that, while a plaintiff's entitlement to discovery prior to a ruling on a motion for summary judgment is not unlimited, the request should be denied only in the following and similar situations:

> (1) The record shows that the requested discovery is unlikely to produce the facts needed to withstand the motion for summary judgment;

> (2) The record shows that the denial is necessary to protect the defendant from harassment and "fishing expeditions";

4. Moreover, Damson contends that negligent misrepresentation was not among the causes of action pleaded by the Owners. The Owners respond somewhat unconvincingly that negligent misrepresentation was "clearly pled under the liberal 'Notice Pleading' rules of the Federal Rules of Civil Procedure." Our holding today obviates the necessity of deciding that issue.

(3) The discovery is dilatorily sought, which can be determined by examining the eight factors listed in *Kadair.*

See *Kadair,* 694 F.2d at 1030–31. The court also noted, however, that the ultimate test for determining whether the district court had abused its discretion is whether its order limiting discovery "was unjust under [Rule] 56(f)." *Id.* at 1031.

The challenged ruling was rendered by a magistrate judge and was affirmed on review by the district court. That we might have reached a different result as a *nisi prius* court does not—indeed, cannot—alter our conclusion at this point in the litigation. *Cates v. Sears, Roebuck & Co.,* 928 F.2d 679 (5th Cir.1991).

*Damson's Counterclaim*

 The counterclaim for an overpayment was tried to the bench and resulted in a judgment in favor of Damson for $11,433.12. The trial court rejected Damson's attempt to recover an additional $3,876.24. The Owners offer little in defense of their position beyond the simple assertion that "the evidence clearly supported the plaintiffs," and that the district court opinion is "internally inconsistent" and therefore should be reversed as clearly erroneous. The paradigm by which we must consider this issue, however, is whether on review of all of the evidence we arrive at a definite and firm conviction that the trial court erred. *Affholder, Inc. v. Southern Rock, Inc.,* 736 F.2d 1007 (5th Cir.1984). The Owners suggest scant support for such a conviction, and we perceive no plain evidence of internal inconsistency in the opinion.

The Owners urge *de novo* review as appropriate because the trial court relied on documentary evidence, citing *Bose Corp. v. Consumers Union of the United States, Inc.,* 466 U.S. 485, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984). *Bose* is inappropriate for it involves first amendment litigation in which the appellate court has an obligation to make an independent examination of the entire record. This final contention by the Owners draws no support from the controlling rubric, Fed.R.Civ.P. 52(a), which provides that "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous...."

For these reasons the judgment of the district court is in all respects AFFIRMED.