**Dr. David G. WALKER, Plaintiff,**

v.

**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, William K. Reilly, Administrator, et al., Defendants.**

**Civ. A. No. H–91–1798.**

United States District Court,
S.D. Texas,
Houston Division.

Aug. 4, 1992.

---

David R. Walker, Royston, Razor, Vickery & Williams, Houston, Tex., for plaintiff.

Joshua M. Levin, Trial Atty., Environmental Defense Section, Daniel David Hu, Asst. U.S. Atty., Houston, Tex., for defendants.

## MEMORANDUM AND ORDER

LAKE, District Judge.

Plaintiff, Dr. David .G. Walker, brings this action pursuant to § 21 of the Toxic Substances Control Act (TSCA), 15 U.S.C.A. § 2620, for judicial review of a final decision by the Administrator of the Environmental Protection Agency (EPA) denying plaintiff's petition to initiate a rulemaking proceeding aimed at amending the definition of "polychlorinated biphenyls" (PCBs) found at 40 C.F.R. § 761.3. Pending before the Court is EPA's Motion to Dismiss for Lack of Subject Matter Jurisdiction, or Alternatively, Motion for Summary Judgment (Docket Entry No. 8), EPA's Motion to Strike or Stay Discovery Pending Ruling on its Motion to Dismiss (Docket Entry No. 29), and Plaintiff's Motion to Compel Discovery Responses (Docket Entry No. 38). EPA seeks dismissal or, alternatively, summary judgment on grounds that plaintiff's claim is barred by *res judicata* and that the Administrator's decision not to initiate the requested rulemaking proceeding was not arbitrary and capricious. For the reasons set forth below, EPA's Motion for Summary Judgment will be granted.

### Factual Background

After finding "that human beings and the environment are being exposed each year to a large number of chemical substances and mixtures" including "some whose manufacture, processing, distribution in commerce, use or disposal may present an unreasonable risk of injury to health or the environment,"[1] Congress enacted TSCA and entrusted its administration to EPA. 15 U.S.C. §§ 2601–2629.[2] Among other things TSCA provided for restrictions on the manufacturing, processing, distribution, use and disposal of hazardous substances, including a statutory ban on PCBs (TSCA. § 6; 15 U.S.C. § 2605), for judicial review of rules promulgated pursuant to TSCA (TSCA § 19; 15 U.S.C. § 2618), and for citizens' petitions to EPA to initiate proceedings to issue, amend, or repeal rules promulgated under TSCA (TSCA § 21; 15 U.S.C. § 2620).

In TSCA § 6 Congress directed EPA to regulate all chemical substances that present or will present unreasonable risks of injury to health or the environment. Section 6(a) governs the regulation of all chemical substances other than PCBs while § 6(e) governs the regulation of PCBs. In singling out PCBs for special treatment under § 6(e), Congress made an unrebuttable finding that PCBs pose an unreasonable risk of injury to health and the environment. *Dow Chemical Co. v. Costle*, 484 F.Supp. 101, 102 and n. 1 (D.Del.1980). Although § 6(e) established a date beyond which the manufacture, processing, and distribution of PCBs were statutorily prohibited, and directed EPA to regulate the labeling, use, and disposal of PCBs, it did not define the term "PCB."

On May 31, 1979, EPA promulgated final regulations prohibiting the manufacture, processing, and distribution of PCBs and controlling their labeling, use, and disposal. 44 Fed.Reg. 31,514 (May 31, 1979). These final regulations included the following definition of "PCB":

> any chemical substance that is limited to the biphenyl molecule that has been chlorinated to varying degrees or any combination of substances which contain such substance.

40 C.F.R. § 761.3; 44 Fed.Reg. 31,544 (May 31, 1979). Under TSCA's provision for judicial review this definition of PCB was subject to review by a court of appeals for a 60–day period following its promulgation as a final rule (TSCA § 19, 15 U.S.C. § 2618).[3] The definition of PCB was not

---

1. 15 U.S.C. § 2601(a).

2. Enacted on October 11, 1976, TSCA took effect on January 1, 1977. See effective date note following 15 U.S.C. § 2601.

3. TSCA § 19, 15 U.S.C. § 2618, provides in pertinent part:

   (a) **In general.**—(1)(A) Not later than 60 days after the date of the promulgation of a rule

challenged under § 19.[4]

Under TSCA § 21 "any person may petition the Administrator to initiate a proceeding for the issuance, amendment, or repeal of a rule under section 2603, 2605, or 2607 of this title ..." 15 U.S.C. § 2620(a). Petitions submitted pursuant to this section "shall be filed in the principal office of the Administrator and shall set forth the facts which it is claimed establish that it is necessary to issue, amend, or repeal a rule ..." 15 U.S.C. § 2620(b). Following the receipt of a TSCA § 21 petition, "[t]he Administrator may hold a public hearing or may conduct such investigation or proceeding as the Administrator deems appropriate in order to determine whether or not such petition should be granted." 15 U.S.C. § 2620(b)(2).

### Administrative Proceedings

On March 27, 1987, plaintiff made the first of three submissions to EPA pursuant to TSCA § 21, 15 U.S.C.A. § 2620, to initiate a rulemaking proceeding aimed at amending the regulatory definition of PCB appearing at 40 C.F.R. § 761.3 to exclude the "less chlorinated biphenyls" (LCBs): monochlorobiphenyls, dichlorobiphenyls, and trichlorobiphenyls. Plaintiff requested

> that the phrase of 40 CFR section 761.3 which reads: "any chemical substance limited to the biphenyl molecule that has been chlorinated to varying degrees ..." be changed to read: "any chemical substance limited to the biphenyl molecule that has been chlorinated to a degree of four or more chlorine atoms per biphenyl molecule ..."[5]

EPA treated plaintiff's submission as a petition under TSCA § 21,[6] denied it on June 24, 1987, and published the reasons for its denial in the Federal Register. 52 Fed. Reg. 25,068 (July 2, 1987).[7]

On July 31, 1987, plaintiff made his second submission to EPA asking for the initiation of a rulemaking proceeding aimed at amending the regulatory definition of PCB

---

under section 2603(a), 2604(a)(2), 2604(b)(4), 2605(a), 2605(e), or 2607 of this title, any person may file a petition for judicial review of such rule with the United States Court of Appeals for the District of Columbia Circuit or for the circuit in which such person resides or in which such person's principal place of business is located. Courts of appeals of the United States shall have exclusive jurisdiction of any action to obtain judicial review (other than in an enforcement proceeding) of such a rule if any district court of the United States would have had jurisdiction of such action but for this subparagraph.

**4.** The definition was the subject of a preenforcement action in which Dow Chemical Company challenged the EPA's authority to regulate monochloro biphenyls (MCBs). *Dow Chemical Co. v. Costle,* 484 F.Supp. 101 (D.Del.1980). Finding that Dow was actually challenging the validity of the regulation rather than an unexpected interpretation and application of it, the district court dismissed the action for lack of subject matter jurisdiction. *Dow Chemical Co.,* 484 F.Supp. at 110–111. Citing *Environmental Defense Fund v. Environmental Protection Agency,* 598 F.2d 62 (D.C.Cir.1978), the *Dow* court determined that inclusion of MCBs in the definition of PCBs was obvious at the time the regulation was published and that any challenge to EPA's authority to regulate MCBs under TSCA § 6(e) would have to have been brought in a court of appeals within 60 days of promulgation. *Id.* at 110. The court noted, however, that its dismiss-

al of Dow's action did not leave Dow without a remedy because Dow was free to follow the course pursued by plaintiff in this action, i.e. "to petition the EPA for an amendment or repeal of the regulation pursuant to [TSCA § 21] 15 U.S.C. § 2620." *Id.* at n. 11. Following the court's recommendation, Dow submitted a § 21 petition seeking to amend the definition of PCBs to exclude mono- and dichlorobiphenyls, which the EPA denied on grounds that Congress had intended to include all chlorinated biphenyls in its regulatory mandate. 47 Fed.Reg. 37,259 (August 25, 1982).

**5.** Appendix to EPA's Motion to Dismiss, Docket Entry No. 9, App. 4, p. 1.

**6.** TSCA does not define "petition." This court has previously stated that the determination whether a submission is sufficiently different from a previous submission "to qualify as a separate petition rests on the content of each. In making this determination, consideration must be given to the relief sought, the identity of the requesting parties, the temporal relationship between submissions, and the presence of new information." *Walker v. United States Environmental Protection Agency, et al.,* No. H–87–3552 (S.D.Tex. October 15, 1990), Appendix to EPA's Motion to Dismiss, Docket Entry No. 9, App. 2, pp. 2–3.

**7.** Appendix to EPA's Motion to Dismiss, Docket Entry No. 9, App. 5.

to exclude LCBs.[8] By letter dated September 11, 1987, Charles L. Elkins, Director of the Office of Toxic Substances, advised plaintiff that EPA would not treat his second submission as a "petition" under TSCA § 21 because the second submission "requested exactly the same rule change" as that sought and denied in his previous submission.[9] Instead, EPA treated plaintiff's second submission as a motion to reconsider its prior decision not to initiate a rulemaking proceeding aimed at amending the regulatory definition of PCB.[10]

Following EPA's refusal to treat his second submission as a petition under TSCA § 21 plaintiff filed suit in this court seeking an order directing EPA to treat his July 1987 submission as a separate and distinct petition that had to be accepted or denied pursuant to the terms of TSCA § 21.[11] In a Memorandum Opinion entered on October 15, 1990, the court found that the decision to treat a citizen's submission as either a petition or as a motion for reconsideration lay within EPA's discretion.[12] The court dismissed plaintiff's action as time-barred because it was not brought within 60 days of EPA's denial of his initial submission as required by TSCA § 21(b)(4)(A); 15 U.S.C. § 2620(b)(4)(A).[13]

On February 6, 1991, plaintiff made his third submission to EPA asking for the initiation of a rulemaking proceeding aimed at amending the regulatory definition of PCB to exclude LCBs. Plaintiff's submission requested that PCB be defined to include only those

biphenyl molecule[s] that [have] been chlorinated to a degree of four or more chlorine atoms per biphenyl molecule and in addition the single trichlorobiphenyl isomer, 2,4,4'—trichlorobiphenyl (compound # 28 by K. Ballschmiter's GC analysis).[14]

EPA treated plaintiff's submission as a "petition" under TSCA § 21, denied it on May 13, 1991, and published the reasons for its denial in the Federal Register. 56 Fed.Reg. 23,534 (May 22, 1991).[15] EPA's Notice of Denial noted that it had previously considered and denied a "similar petition" from plaintiff. 56 Fed.Reg. 23,535 (May 22, 1991).[16] Plaintiff filed this action on June 25, 1991, seeking an order compelling the Administrator of EPA to initiate the requested rulemaking proceeding.

### District Court Jurisdiction and Standard of Review

If a citizens' petition submitted pursuant to TSCA § 21 is denied, the Administrator must "publish in the Federal Register the ... reasons for such denial," 15 U.S.C. § 2620(b)(3), and the petitioner "may commence a civil action in a district court of the United States to compel the Administrator to initiate a rulemaking proceeding as requested in the petition." 15 U.S.C. § 2620(b)(4)(A). Because TSCA § 21 explicitly grants jurisdiction to review denials of petitions submitted pursuant to it to the district courts of the United States, this court has jurisdiction over this action.[17]

8. *Id.* at App. 1A.

9. *Id.* at App. 1B.

10. *Id.* at App. 1B and App. 2, p. 2.

11. *Id.* at App. 1.

12. *Id.* at App. 2, p. 3.

13. *Id.* at p. 4.

14. *Id.* at App. 3, p. 1.

15. Appendix to EPA's Motion to Dismiss, Docket Entry No. 9, App. 6.

16. *Id.*

17. Following a lengthy analysis of the types of judicial review accorded by TSCA § 21, the

Court of Appeals for the District of Columbia concluded that EPA denials of TSCA § 21 petitions to amend or repeal existing rules should not receive the same type of review accorded to denials of TSCA § 21 petitions to issue new rules. *Environmental Defense Fund v. Reilly,* 909 F.2d 1497, 1503 (D.C.Cir.1990). In that court's assessment, TSCA § 21 accorded denials of petitions to issue new rules *de novo* review in district court, but accorded denials of petitions to amend or repeal existing rules Administrative Procedure Act review in the circuit courts of appeals. *Id.* at 1504. Because a party seeking to invoke the jurisdiction of this court must demonstrate that the action falls within the court's competence, the court ordered plaintiff to submit a supplemental brief demonstrating that jurisdiction to entertain this action lies in this court rather than in a court of appeals. (Docket Entry No. 31) Both parties

The type of review accorded the denial of a TSCA § 21 petition depends on whether the petition requests the issuance of a new rule or seeks the amendment or repeal of an existing rule. TSCA § 21 describes the *de novo* review available for denials of petitions to issue new rules.

In an action under subparagraph (A) *respecting a petition to initiate a proceeding to issue a rule* under section 2603, 2605, or 2607 of this title or an order under section 2604(e) or 2605(b)(2) of this title, the petitioner shall be provided an opportunity to have such petition considered by the court in a *de novo* proceeding. If the petitioner demonstrates to the satisfaction of the court by a preponderance of the evidence that—

. . . .

(ii) in the case of a petition to initiate a proceeding for the issuance of a rule under section 2605 or 2607 of this title or an order under section 2605(b)(2) of this title, there is a reasonable basis to conclude that the issuance of such a rule or

order is necessary to protect the health or the environment against an unreasonable risk of injury ...

the court shall order the Administrator to initiate the action requested by the petitioner. (emphasis added)

15 U.S.C. § 2620(b)(4)(B). In contrast to the detailed description of the *de novo* review available for denials of TSCA § 21 petitions to issue new rules, TSCA § 21 provides no description of the type of review available to denials of petitions to amend or repeal existing rules. Absent a statutory command to employ a particular standard of review for denials of petitions to amend or repeal existing rules, the review available is the arbitrary and capricious standard of review prescribed by the APA. 5 U.S.C. § 706; *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 413–420, 91 S.Ct. 814, 822–825, 28 L.Ed.2d 136 (1971); *American Paper Institute, Inc. v. American Electric Power Serv. Corp.*, 461 U.S. 402, 412–413, 103 S.Ct. 1921, 1927–1928, 76 L.Ed.2d 22 (1983).[18]

have submitted briefs in which they argue that jurisdiction is proper in this court, and the court concurs that it has jurisdiction.

**18.** Congress' reasons for providing different standards of review are explained in the House Conference Report on TSCA § 21.

The conference substitute ... provides for different judicial review of the Administrator's denial of a petition, depending upon whether such petition seeks the issuance of a rule or order or the amendment or repeal of an existing rule or order.

The substitute affords greater rights to a person petitioning for the issuance of a rule or order because in such a situation the Administrator will not previously have addressed the issue by rule or order. If the Administrator denies or fails to respond to a petition for the issuance of a rule or order, the petitioner may commence a civil action in a United States district court to compel the Administrator to take the action requested in the petition. In the court, the petitioner is entitled to a *de novo* proceeding. If the petitioner demonstrates to the court by a preponderance of the evidence that there is an adequate basis for the issuance of the rule or order requested, the court shall order the Administrator to initiate the requested action.

. . . . .

*The conference substitute provides different treatment for review of petitions for amendment or repeal of rules or orders,* because the Administrator already will have addressed the

general subject matter in an existing rule or order and the Administrator's determination will have been subject to review under section 19 of this Act. Therefore, the conferee's main interest is to make certain that any such petitioner receive timely consideration of such petition. By requiring the Administrator to act on any such petition within 90 days, the conferees will facilitate such a petitioner's right to seek judicial review should the Administrator deny the petition. Otherwise, the Administrator could avoid any judicial review simply by failing to take any action.

The conferees believe that a petition for amendment or repeal of an existing rule or order should contain newly discovered, noncumulative material which was not presented for the Administrator's consideration in promulgating the rule or order. Failure to include such information would be an adequate basis for denying the petition.

At the same time, the conferees do not intend that the Administrator be subjected to constant petitions challenging rules or orders for which adequate judicial review is provided under section 19. Therefore, *if the Administrator denies a petition to amend or repeal an action under section 4, 5(e), 6, or 8, the conference substitute permits review of such denial only under the Administrative Procedure Act.* (emphasis added)

H.Rep. No. 1679, 94th Cong., 2nd Sess. 98, 99 (1976), reprinted in 1976 U.S.C.C.A.N. 4491, 4539, 4583–4584; and *Legislative History of the*

Under this standard of review EPA's denial of plaintiff's request is presumed valid, and must be upheld, unless the court finds that it was "arbitrary, capricious, an abuse of discretion, or otherwise not ·in accordance with law." 5 U.S.C. § 706(2)(A); *see American Paper Institute*, 461 U.S. at 412–413, 103 S.Ct. at 1927–1928; *Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Automobile Insurance Co.*, 463 U.S. 29, 41–43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983). In reviewing EPA's denial under an arbitrary and capricious standard, the court must review the entire record and must verify that EPA followed the necessary procedural requirements, examined relevant data, and articulated a rational explanation for its decision. *Overton Park*, 401 U.S. at 414–417, 91 S.Ct. at 822–824. Although the court's inquiry into the facts underlying the EPA's decision is "to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency." *Overton Park*, 401 U.S. at 416, 91 S.Ct. at 824. Accordingly, EPA's decision will be found infirm only

> if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Manufacturers Ass'n*, 463 U.S. at 43, 103 S.Ct. at 2867. In the context of this action EPA is entitled to summary judgment on the merits if its denial of plaintiff's petition to initiate rule-making proceedings was consistent with Congress' mandate under TSCA and rationally connected to the facts contained in the administrative record.

### Review of the Administrator's Decision

After reviewing plaintiff's 1991 petition to initiate rulemaking proceedings aimed at amending the definition of PCB to exclude LCBs, the Administrator of EPA denied the petition and published the reasons for doing so in the Federal Register. 56 Fed. Reg. 23,534 (May 22, 1991).[19] EPA argues that it is entitled to summary judgment on the merits because the Administrator's decision not to initiate the requested rulemaking proceeding was not arbitrary and capricious. In response plaintiff argues that facts material to whether EPA's decision was arbitrary and capricious are within the exclusive control of EPA, and that the court should compel EPA to respond to requests for discovery and defer its consideration of EPA's motion for summary judgment until necessary discovery has been completed.

Plaintiff asserts that he cannot adequately respond to EPA's motion without deposing Ernest V. Falke, the author of a March 29, 1991, memorandum included as part of Appendix 7 to EPA's motion.[20] Citing *Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 199–200 (5th Cir.), *cert. denied*, 488 U.S. 926, 109 S.Ct. 310, 102 L.Ed.2d 329 (1988),[21] plaintiff argues that a fact issue exists whether EPA's decision was arbitrary and capricious because Dr. Falke's memorandum indicates that he did not read the references to scientific literature cited by plaintiff in his TSCA § 21 petition before recommending that EPA deny the petition. Plaintiff argues that because discovery has not been completed, EPA's motion for summary judgment is premature and that because the. information and documents that he needs to controvert the allegations in EPA's motion are within the

*Toxic Substances Control Act*, 667, 711–712 (1976).

**19.** Appendix to EPA's Motion to Dismiss, Docket Entry No. 9, App. 6.

**20.** *Id.* at App. 7, pp. 8–13.

**21.** Plaintiff cites *Isquith* for the proposition that a non-movant can defeat a motion for summary judgment without coming forward with summary judgment evidence when the movant's own documents demonstrate the existence of material facts precluding summary judgment. Plaintiff's Memorandum in Opposition to EPA's Motion for Summary Judgment, Docket Entry No. 21, pp. 5–6.

exclusive possession of EPA, the court should compel EPA to respond to his discovery requests. Citing *United States v. Morgan,* 313 U.S. 409, 421–422, 61 S.Ct. 999, 1004–1005, 85 L.Ed. 1429 (1941), EPA responds that because this is a record review case, the administrative record contains all that is relevant to the decision at issue and eliminates the need for discovery. EPA further argues that absent an allegation that the record is incomplete or a showing of bad faith, plaintiff is not entitled to pursue discovery to challenge its decision.

■ *Plaintiff's Motion to Compel Discovery and Defendant's Motion to Strike Discovery.* In *Overton Park* the Court stated that review of agency decisions under the arbitrary and capricious standard prescribed by the APA, "is to be based on the full administrative record that was before the [head of the agency] at the time he made his decision." 401 U.S. at 420, 91 S.Ct. at 825. Although an exception to this general rule arises when "there was such failure to explain administrative action as to frustrate effective judicial review," *Camp v. Pitts,* 411 U.S. 138, 142–143, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973), "where there are administrative findings that were made at the same time as the decision [at issue] ... there must be a strong showing of bad faith or improper behavior" before extra-record inquiry may be made. *Overton Park,* 401 U.S. at 420, 91 S.Ct. at 825. Because the decision in this case was accompanied by administrative findings that were published in the Federal Register, 56 Fed.Reg. 23,534 (May 22, 1991),[22] and because plaintiff has not argued that the record is incomplete, plaintiff is not entitled to extra-record discovery absent a "strong showing of bad faith or improper behavior" on the part of EPA.

Plaintiff argues that the memorandum authored by Dr. Falke "indicates that he did not read the references to scientific literature cited by [plaintiff] in his petition," and that his "apparent failure" to

read the references to scientific literature "before recommending denial of [plaintiff's] petition creates a material fact issue with respect to whether EPA's decision was arbitrary and capricious." [23] Although plaintiff does not specifically state that Dr. Falke's failure to read the cited references demonstrates that he acted improperly, plaintiff implies that this indication of impropriety entitles plaintiff to conduct discovery beyond the administrative record because the record itself is inadequate to explain the EPA's decision.

■ While Federal Rule of Civil Procedure 56(c) allows courts to consider depositions, answers to interrogatories, and admissions on file in ruling on motions for summary judgment, it does not require that discovery take place before a motion for summary judgment may be considered. When the discovery sought is irrelevant to the court's consideration of a pending motion, summary judgment can and should be granted without discovery. *Mills v. Damson Oil Corp.,* 931 F.2d 346, 350 (5th Cir. 1991), *citing Paul Kadair, Inc. v. Sony Corp.,* 694 F.2d 1017 (5th Cir.1983). Motions to compel discovery should therefore be denied if the record shows either "that the requested discovery is unlikely to produce the facts needed to withstand the motion for summary judgment" or that "denial is necessary to protect the defendant from harassment and 'fishing expeditions[.]' " *Id.*

Because one of the factors the court must consider in determining whether the EPA's denial of plaintiff's petition was arbitrary and capricious is whether EPA examined relevant data, plaintiff's assertion that EPA and/or one of its consultants failed to review new evidence cited in his petition could conceivably constitute a showing of improper behavior or bad faith sufficient to establish the necessity of extra-record discovery. In this case, however, plaintiff's assertion of such impropriety lacks any merit. The memorandum au-

---

**22.** Appendix to EPA's Motion to Dismiss, Docket Entry No. 9, App. 6.

**23.** Plaintiff's Memorandum in Opposition to EPA's Motion for Summary Judgment, Docket Entry No. 21, p. 5.

thored by Dr. Falke on which plaintiff relies as evidence of EPA's improper conduct is a pre-decisional (March 29, 1991) analysis of plaintiff's petition in which the author specifically states that he has not read the literature cited by plaintiff, but cautions that "the degree to which the [plaintiff's] 1991 petition strengthens [plaintiff's] conclusion[s] must await a review of the cited documents," and concludes that "without a review of this literature the conclusions made by [plaintiff] cannot be assessed." [24] Plaintiff's assertion that his petition was denied in part on the basis of a recommendation made in this memorandum mischaracterizes the memorandum, which does not recommend denial of the petition, but instead recommends further review of the literature cited therein.

Because plaintiff has neither alleged that the administrative record before the court is incomplete, nor made a strong showing that improper behavior or bad faith by EPA created a record that is inadequate to explain EPA's decision, plaintiff has failed to demonstrate the need for extra-record discovery. Accordingly, Defendant's Motion to Strike Discovery, Docket Entry No. 29, is GRANTED, and Plaintiff's Motion to Compel Discovery Responses, Docket Entry No. 38, is DENIED.

*Defendant's Motion for Summary Judgment.* EPA argues that it is entitled to summary judgment on the merits because its decision not to initiate rulemaking proceedings aimed at amending the regulatory definition of PCBs was not arbitrary and capricious, but was both rationally connected to the facts contained in the administrative record and consistent with the clear intent of Congress to include all chlorinated biphenyls in the definition of PCB. EPA also argues that it is entitled to summary judgment because plaintiff has failed to establish either that his petition contained "newly discovered, non-cumulative material" justifying the requested rule change, or that the rule change would not create an unreasonable risk of injury to health or the environment.

*Was EPA's denial of plaintiff's petition arbitrary and capricious?* In reviewing EPA's determination not to initiate the rulemaking proceeding requested by plaintiff under the arbitrary and capricious standard of review prescribed by the APA, the court must review the entire record to verify that EPA followed the necessary procedural requirements, examined relevant data, and articulated a rational explanation for its decision. *Overton Park,* 401 U.S. at 414–17, 91 S.Ct. at 822–824; *Motor Vehicle Manufacturers Ass'n,* 463 U.S. at 42–43, 103 S.Ct. at 2866–2867. Unless the court finds that EPA failed to satisfy one or more of these three requirements, EPA's determination must be upheld. Plaintiff claims only that EPA failed to review relevant data and failed to articulate a rational explanation for its decision; he does not claim that EPA failed to follow the necessary procedural requirements.

■ *Did EPA review relevant data?* Plaintiff asserts that Dr. Falke's failure to read the scientific literature cited in plaintiff's petition by the time of Dr. Falke's March 29, 1991, memo creates a material fact issue whether EPA's decision was arbitrary and capricious. Although Dr. Falke's March 1991 memorandum unambiguously states that he had not read the scientific literature cited in plaintiff's petition, the memorandum was only a pre-decisional analysis of plaintiff's petition in which Dr. Falke specifically cautioned that "the degree to which the [plaintiff's] 1991 petition strengthens [plaintiff's] conclusion[s] must await a review of the cited documents," and concluded that "without a review of this literature the conclusions made by [plaintiff] cannot be assessed." [25] The memorandum is not evidence that EPA failed to review the cited literature prior to issuing its decision approximately two months later on May 22, 1991. Moreover, even if plaintiff could show that EPA failed to review scientific references cited in his petition before denying it, the court could not find that EPA had failed to review

**24.** Appendix to EPA's Motion to Dismiss, Docket Entry No. 9, App. 7, p. 9.

**25.** Appendix to EPA's Motion to Dismiss, Docket Entry No. 9, App. 7, p. 9.

relevant data absent a separate and distinct showing that the material EPA had not reviewed was in fact relevant. TSCA § 21(b)(2) specifically provides that in determining whether to grant or deny a petition submitted pursuant to it

> The Administrator may hold a public hearing or may conduct such investigation or proceeding as the Administrator deems appropriate in order to determine whether or not such petition should be granted.

15 U.S.C. § 2620(b)(2). Because the statute itself grants EPA the discretion to "conduct such investigation ... as the Administrator deems appropriate ... to determine whether or not such petition should be granted," the determination of what material is relevant to the decision rests largely with EPA. Because plaintiff has neither analyzed the data from the references cited in his 1991 petition nor correlated it with the contentions in his complaint, the court has no basis on which to conclude that the cited references were relevant, or that an EPA decision to discount them as irrelevant would have been arbitrary and capricious.

■ *Did EPA articulate a rational explanation for its decision?* Plaintiff argues that EPA's failure to review all the relevant data caused EPA to base its decision in part on the determination that plaintiff had not addressed the question of whether less chlorinated PCBs migrate through the food chain from bottom-feeding fish, ultimately posing a potential threat to humans, even though four references to scientific literature cited on pages 11 and 12 of plaintiff's petition indicate that LCBs do not accumulate in bottom-feeding fish.

Plaintiff is mistaken in asserting that EPA denied his petition because of his failure to address the question of bio-accumu-

lation of PCBs in bottom-feeding fish.[26] In its denial of plaintiff's petition EPA discussed the risks posed by the possibility of bio-accumulation of PCBs in bottom-feeding fish and rejected plaintiff's contention that because LCBs are "readily biodegradable and not environmentally persistent," their "ecological magnification is not an important risk," 56 Fed.Reg. 23,536 (May 22, 1991). Instead, EPA determined that

> PCB congeners will reside in sediments at the bottom of the aquatic media under anaerobic conditions, and in oceans under aerobic conditions, will biodegrade slowly, and will be persistent. Bottom-feeding fish, as well as fish in the oceans, will bioconcentrate the PCBs. Predators feed on these species and bioaccumulate the PCBs, and in this way PCBs are transported up the food chain. Ecological magnification could, therefore, be large, and man and the environment would be potentially at risk.

56 Fed.Reg. 23, 536 (May 22, 1991). EPA based this determination on findings reported in a document entitled "Environmental Transport and Transformation of Polychlorinated Biphenyls" contained in the administrative record as part of item (1) in Unit IV. EPA's rejection of plaintiff's contention did not result from his alleged failure to address the issue of bio-accumulation in bottom-feeding fish, but rather from EPA's resolution of a conflict in the evidence.[27]

Plaintiff's conclusory allegations—that EPA failed to review the scientific literature cited in his petition and that EPA's failure to review the literature cited by plaintiff caused EPA to render a decision contrary to the evidence—do not establish that EPA's denial of his TSCA § 21 petition was arbitrary and capricious. Instead, these arguments merely reflect plaintiff's

---

**26.** The only issue that EPA stated plaintiff had failed to address was the toxicity data for aquatic organisms. 56 Fed.Reg. 23,536 (May 22, 1991). Plaintiff does not challenge this statement.

**27.** Even were plaintiff correct in arguing that EPA based its denial of his petition on a determination that plaintiff had failed to address the

issue of bio-accumulation in bottom-feeding fish, plaintiff has neither identified which four of the eight references cited on pages 11 and 12 of his 1991 petition indicate that LCBs do not bio-accumulate in bottom-feeding fish nor demonstrated how the data contained in these references counter EPA's determination that LCBs do bio-accumulate in bottom-feeding fish.

disagreement with EPA's resolution of a conflict in the evidence.

■ *Did plaintiff's petition contain newly discovered, non-cumulative material?* EPA also argues that it is entitled to summary judgment on the merits because plaintiff has failed to establish that his petition contained newly discovered, non-cumulative material justifying the requested rule change. Since 1987 plaintiff has made three submissions to EPA seeking amendment of the regulatory definition of PCB to exclude LCBs. Because plaintiff's 1991 petition was substantially similar to his two 1987 submissions, EPA argues that it is entitled to summary judgment because it may deny repetitive petitions that do not contain "newly discovered, non-cumulative material" justifying the requested rule change. EPA points to the following excerpt from the Conference Report on TSCA § 21 as support for this argument:

> The conferees believe that a petition for amendment or repeal of an existing rule or order should contain newly discovered, noncumulative material which was not

presented for the Administrator's consideration in promulgating the rule or order. Failure to include such information would be an adequate basis for denying the petition.

H.Rep. No. 1679, 94th Cong., 2nd Sess. 98, 99 (1976), *reprinted in* 1976 U.S.C.C.A.N. 4539, 4583–4584; and *Legislative History of the Toxic Substances Control Act,* 667, 711–712 (1976).

Although EPA acknowledges that plaintiff's 1991 petition contained a number of references not previously submitted, EPA argues that the references were of only marginal worth because plaintiff failed to analyze the data from them. After a careful review of plaintiff's three submissions and the references cited in them, the court concludes that the majority of the references to scientific literature contained in plaintiff's 1991 petition were either cited in one of his 1987 submissions or were available at the time of the earlier submissions.[28] As EPA argues, plaintiff's 1991 petition contains little if any newly discovered, non-cumulative material.[29] Moreover, some of

---

28. Works cited in the essay accompanying plaintiff's current petition (Appendix to Defendant's Motion to Dismiss, Docket Entry No. 9, App. 3A) that were either cited in an earlier request or available at the time that the earlier requests were submitted on March 27, 1987, and July 31, 1987, include the following: S. Tanabe, K. Maruyama, R. Tatsukawa, "Absorption Efficiency and Biological Half-life of the Individual Chlorobiphenyls in Carp Orally Exposed to Kanexhlor Products," 46 *Agric. Biol. Chem.* 891–898 (1982), cited on pp. 6 and 8; S. Tanabe, Y. Kakagawa, R. Tatsukawa, "Absorption Efficiency and Biological Half-life of Individual Chlorobiphenyls in Rats Treated with Kanechlor Products," 45 *Agric. Biol. Chem.* 717–726 (1981), cited on p. 8; J.F. Brown, Jr., et al., "Polychlorinated Biphenyls Dechlorination in Aquatic Sediments," 236 *Science* 709–712 (May 8, 1987), cited on pp. 9 and 10; J.W. Moore, S. Ramanmoorthy, *Organic Chemicals in Natural Waters,* 1984, cited on p. 9; J.F. Brown, Jr., et al., "PCB Transformation in Upper Hudson Sediments," 3/3–4 *Northeastern Environmental Sci.* 166–178 (1984), cited on p. 10; J.C. Duinker, M.T.J. Hillebrand, "Composition of PCB Mixtures in Biotic and Abiotic Marine Components of the Dutch Wadden Sea," 31 *Bull. Environ. Contam. Toxicol.* 24–32 (1984), cited on p. 11; M.G. Castelli, et al., "Quantitative Determination of the PCBs in Marine Organisms Analyzed by High Resolution Gas Chromatography with Selected Ion Monitoring," 12 *Chemosphere* 291–298 (1983),

cited on p. 11; K. Ballschmiter, et al., "The Pattern of Pollution by Organo-chlorine Compounds in the North Atlantic as Accumulated by Fish," 306 *Frensenius Z. Anal. Chem.,* 323–329 (1981), cited on p. 11; K. Ballsch[m]iter, et al., "Organochlorine Compounds in Surface-Water and Deep Sea Fish from the Eastern North Atlantic," 3 *Chemosphere* 1255–1267 (1984), cited on p. 11; "Summary of the Health Effects of PCBs," submitted to the EPA by Chemical Manufacturer's Association, OTS 0502785 62018 D 16, EPA Microfiche, November 1981, cited on p. 12; "Comments in Response to the EPA's Comments on the Health Effects of the PCBs," prepared by Ecology and Environment, Inc, August 18, 1982, cited on p. 12; "Literature Update on the Potential Health Effects from Exposure to PCBs and Related Heterocycles," TS 506956 62032 E 18, EPA Microfiche, December 10, 1983, cited on p. 13.

29. Only two works cited in the essay accompanying plaintiff's current petition (Appendix to Defendant's Motion to Dismiss, Docket Entry No. 9, App. 3A) carry dates after the dates on which plaintiff's previous submissions to the EPA: C.B. Cleveland, B.C. Oliver, R.A. Sonstegard, Bioaccumulation of Halogenated Aromatic Hydrocarbons in C57B1/6 and DBA/2 Mice following Consumption of Great Lakes COHO Salmon (Corrhynchus kisutch), 17/2 *Chemosphere* 405–420 (1988), cited on p. 10; and R.B. Harbison, R.C. James, S.M. Roberts, "Biological

plaintiff's references are to works that were written prior to May 31, 1979, the date on which EPA published its final definition of PCB.[30] Because plaintiff's most recent petition to EPA is not based on newly discovered, non-cumulative material, EPA's denial of the petition on this basis cannot be considered arbitrary and capricious.

**■** *Would plaintiff's requested rule change create an unreasonable risk of injury to health or the environment?* EPA also argues that it is entitled to summary judgment because plaintiff has failed to establish that the requested rule change would not create an unreasonable risk of injury to health or the environment. Plaintiff counters that "his Petition included sufficient evidence to demonstrate that the chemicals proposed for deregulation do not present an unreasonable risk of injury to humans or the environment," and complains that "there are no equally satisfactory substitutes" for the chemicals he wants to manufacture.[31]

TSCA § 21 states that parties urging petitions "shall set forth the facts which it is claimed establish that it is necessary to issue, amend, or repeal a rule...." 15 U.S.C. § 2620(b)(1). Under this standard plaintiff could not have met the statutory requirement for activating EPA's rulemaking authority merely by demonstrating that the requested rule change will not present an unreasonable risk of injury to humans and the environment. Rather, plaintiff had to establish that his requested rule change was "necessary." Within the context of

TSCA "necessary" means necessary to protect health and the environment from unreasonable risks of injury posed by toxic substances. 15 U.S.C. § 2601.[32]

In his 1991 petition, plaintiff states that he is seeking the requested rule change because it will enable him to market his new "Walker Solvent," a product that he claims would: aid the manufacture of a new mobile motor fuel from coal; enable high-sulfur coal to be used in power plants without creating high-sulfur pollution; aid the low-cost manufacture of ethylene and propylene; spur the development of oil from shale and tar sands; reduce coke usage and increase blast furnace capacity in the production of pig iron.[33] Although plaintiff claims that his method/technology is considerably more effective and considerably less expensive than methods and technologies currently in use,[34] he makes no assertion that the marketing of "Walker Solvent" is necessary to protect health and the environment from unreasonable risks of injury posed by toxic substances. Because plaintiff has made no showing, either in his petition to EPA or in his complaint and summary judgment papers before this court, that his requested rule change is necessary to protect health and the environment from unreasonable risks of injury posed by toxic substances, he has failed to meet the statutorily established prerequisite for activating the EPA's rulemaking authority.

### Conclusion

The court concludes that EPA's denial of plaintiff's § 21 petition was not arbitrary

Data Relevant to the Evaluation of Carcinogenic Risk to Humans," (an apparently unpublished study dated August 1987), cited on p. 12.

**30.** Works cited in the essay accompanying plaintiff's 1991 petition (Appendix to Defendant's Motion to Dismiss, Docket Entry No. 9, App. 3A) that were available for EPA review prior to the date on which the regulatory definition of "PCB" was promulgated include the following: K. Furukawa, K. Tonomure and A. Kamibayashi, "Effect of Chlorine Substitution on the Biodegradability of Poly-chlorinated Biphenyls," *Applied and Environmental Microbiology,* 223–227 (February 1978), cited on p. 6; and G. Sundstrom, G. Hutzinger, and S. Safe, "The Me-

tabolism of Chlorobiphenyls: A Review," 5 *Chemosphere* 1267–1298 (1976), cited on p. 12.

**31.** Plaintiff's Original Complaint, Docket Entry No. 1, p. 4.

**32.** *See also* TSCA § 21(b)(4)(B)(ii); 15 U.S.C. § 2620(b)(4)(B)(ii).

**33.** Appendix to EPA's Motion to Dismiss, App. 3, p. 1. See also Plaintiff's first request for rule change submitted to EPA on March 27, 1987, Appendix to EPA's Motion to Dismiss, App. 4, pp. 1–6.

**34.** Plaintiff's first request for rule change submitted to EPA on March 27, 1987, Appendix to EPA's Motion to Dismiss, App. 4, pp. 1–6.

and capricious (1) because there is no merit to plaintiff's allegation that Dr. Falke's failure to read the scientific literature cited in plaintiff's 1991 petition caused EPA to render a decision contrary to evidence or creates an issue of material fact whether EPA's decision was arbitrary and capricious, and (2) because EPA examined relevant data and articulated a reasoned explanation for its decision that was rationally related to facts contained in the administrative record and consistent with Congressional intent to protect health and the environment from unreasonable risks of injury posed by toxic substances. Accordingly, defendant's Motion for Summary Judgment, Docket Entry No. 8, is GRANTED.